ODOM, Justice.
 

 Plaintiff was struck and knocked down-on the main street of the Town of Olla by an automobile owned and operated by A. J. Osterland. She was badly injured and brought this suit against Osterland and his insurer for damages resulting from the injury. There was judgment in the lower court in favor of plaintiff and against the defendants in solido for $10,000 and all'
 
 *424
 
 costs. Defendants appealed to the Court of Appeal, Second Circuit, which court affirmed the judgment. 3 So.2d 674. Defendants applied to this court for writs, which were granted, and the case is now before us for review.
 

 The Court of Appeal reviewed the testimony in detail and at length, and concluded that plaintiff was guilty of gross negligence in attempting to cross the street as she did and that her negligence continued up to the moment of the accident. The court also reached the conclusion that Osterland, the driver of the car, was guilty of gross negligence in the operation of his vehicle. But it found as a fact that Osterland saw the plaintiff walking on the street in front of him in time to have avoided the accident if he had used proper care and precautions after seeing plaintiff in her position of peril, or that he could have seen her if he had been looking ahead as he should. Osterland and his insurer were held liable under the last clear chance doctrine.
 

 The main point stressed by counsel for defendants, both in oral argument and in their original and supplemental briefs, is that, under the facts and circumstances found by both the trial court and the Court of Appeal, there is no room here for the application of the last clear chance doctrine. Counsel for plaintiff takes the view that the doctrine is applicable. In oral argument and in brief, counsel for plaintiff advanced the theory that the Court of Appeal erred in holding that plaintiff was guilty of negligence. His contention is that she was guilty of no negligence at all.
 

 When the case was argued orally before this court, counsel for defendants expressed surprise that plaintiff’s counsel should advance the theory that his client was not guilty of negligence, especially in view of the fact that the Court of Appeal had definitely determined that she was negligent. They asked for time in which to file a supplemental brief, which was granted, and their brief is now before us.
 

 The entire record, including a transcript of the evidence, was sent up and is now before us. Counsel for defendants suggest that it is not the function of this court to examine the evidence when a case of this kind is brought up for review. But, when a case is ordered up, we consider all points involved as we do in cases brought before us on appeal.
 

 After a most careful examination of the testimony, we have reached the conclusion, and we hold, that the plaintiff was not negligent in attempting to cross the street as she did. But we find, as did the district court and the Court of Appeal, that Osterland, the driver of the car, was grossly negligent and that the accident was due entirely to his negligence.
 

 There is but little dispute as to the facts and circumstances relating to, and connected with, the traffic accident which caused plaintiff’s injury. While attempting to walk across Front Street in the Town of Olla, Mrs. Law, the plaintiff, who is 38 years of age, was struck and knocked down by the automobile owned and operated by A. J. Osterland. Front Street runs north and south, and is intersected at right angles by Pine Street. Front Street is 62
 
 *426
 
 feet wide, and the main highway from Monroe to Alexandria, Louisiana, runs through and on the eastern edge of it. That part of the street referred to as the “main highway” is 20 feet wide and is paved. A painted traffic line, or stripe, runs through the center of the pavement. That portion of the pavement on the west side of the traffic stripe is the lane for vehicles going south, and that on the east side of it is for vehicles going north.
 

 That portion of the street from the curb or sidewalk on the western edge to the pavement is 42 feet wide and is surfaced with “black-top”. The distance, therefore, from the curb or sidewalk on the west edge of Front Street to the stripe in the center of the pavement is approximately 52 feet. Pine Street, which intersects Front Street at right angles, is approximately 40 feet wide.
 

 The Olla Mercantile Company’s store building is at the northwest corner of the intersection, and the Olla State Bank building is at the southwest corner. These buildings face Front Street. The plaintiff lives west of, and some distance from, Front Street. She left her home early in the evening, but after dark, intending to attend services at a church situated some distance east of Front Street. She walked in an easterly direction until she reached Front Street at the corner of the Olla Mercantile building. She then walked south across Pine Street along the west edge of Front Street in the direction of the Olla Bank building until she reached a point a few feet south of the center of Pine Street. She then turned left and walked in a southeasterly direction diagonally across Front Street until she reached a point near the stripe in the center of the pavement, where she was struck and knocked down by the Osterland car, which was going south toward Alexandria.
 

 As to the precautions which plaintiff took to avoid an accident, she said: “As I was going across the street I looked both ways I am sure because I always do. • I didn’t see any cars or if I saw any car lights I was'sure I could get across ahead of them. I was across the black line when I noticed this car’s lights bearing down on me.”
 

 Plaintiff’s mother testified that her daughter told her that “she looked both ways to see if a car was coming and that if she had seen it she was sure that she could make it across if she saw it; if she saw it she was confident she could make it across”. Plaintiff testified on cross-examination that she did not see the Osterland car approaching from the north until it was a few feet from her, and testified further that her view of the street both ways was unobstructed.
 

 Plaintiff’s testimony as a whole makes it perfectly clear that she understood and realized the danger of attempting to walk across Front Street, which is a prominent and much travelled thoroughfare, and that she knew that it was her duty to take proper precautions before entering the street.
 

 The argument for defendants is that either the plaintiff did not take proper precautions by looking and listening before she entered the street, or, if she took the proper precautions before entering the street, her
 
 *428
 
 attempt to cross the street under the circumstances amounted to the grossest kind of negligence. In other words, counsel’s contention, as stated in their original brief, is that plaintiff “was hurrying to church some distance away across the railroad tracks, and that she did see the Osterland car approaching from a distance; and, instead of hesitating her course or stopping abruptly, she plunged across the street with the idea in mind of beating the Osterland car across the intersection”.
 

 Plaintiff repeatedly stated in the course of her testimony that, if she saw the car or its lights, she thought she had time to cross the street with safety. The argument for defendant is that, accepting her testimony as true, she was mistaken in her calculations as to the time it would take her to walk across the street and as to the time it would take the Osterland car to reach the point where she entered, and that she must suffer the consequences of her own mistake.
 

 According to the view which we take, the plaintiff was not careless or imprudent in entering the street as she did. She lived in the Town of Olla and knew the traffic regulations laid down in the ordinances of the town. She knew that the speed limit on Front Street, as prescribed by the ordinance, was 25 miles per hour. She had the right to assume, and to act upon the assumption, that the operators of motor vehicles would obey the law, and it is perfectly clear that, if Mr. Osterland, who was driving the car which injured plaintiff, had observed the traffic rules as prescribed by the ordinance, she would have had ample time to get across the street before the car-reached the intersection of Pine and Front Streets. Assuming, as she had a right Ru do, that the operators of motor vehicles on Front Street would observe the traffic-rules, she made no mistake in her calculations. Under the circumstances, she had a. right to assume that she could cross the.street with safety.
 

 According to the facts found by both the-trial court and the Court of Appeal, theOsterland car was running at a speed of not less than 45 miles an hour. Mr. Dunny who was called as a witness by defendants, testified that Mr. Osterland told him he was driving at a speed of about 50 miles art' hour. Mr. Osterland admitted that hematíe frequent automobile trips through the Town of Olla and that he knew the speed limit was 25 miles per hour. The testimony shows that signs are posted along the roadway showing what the speed limit is. Our reading of the testimony convinces us that the Court of Appeal made no mistake in-holding that the Osterland car was moving at a speed of not less than 45 miles per hour. . The driver of the car was therefore proceeding through the town, after dark, not only in utter disregard of the traffic ordinance but in violation of the commonsense rules of safety and security. H.e testified that he did not see plaintiff until his car was within a few feet from her. The reason he assigned for not seeing her was that he was watching another car approaching from the opposite direction. But that did not relieve him of the duty of looking ahead constantly for the approach of pedestrians. In view of the fact that the-
 
 *430
 
 highway on which Mr. Osterland was driving runs through this town and through the town’s principal street, which is constantly crossed by pedestrians, his conduct in ■driving at the speed he did, and without looking as he should, and especially after dark in the early evening, may, we think, be properly characterized as reckless driving.
 

 A vehicle running at a speed of 25 miles per hour covers a distance of 34 feet per ■second, and at a speed of 45 miles per hour covers a distance of 66 feet per second; so that the Osterland car was covering each •second of time 32 feet in excess of that allowed by law.
 

 It is estimated that plaintiff was walking at the rate of about 4 miles per hour from the time she entered the street until she was- struck. She was therefore covering a distance of approximately 6 feet per second. The distance from where she entered the street to the traffic stripe where she was struck is approximately 52 feet. It therefore took her approximately 8 seconds to reach the traffic stripe. But the ■testimony shows that there were several automobiles parked on the west side of Front Street which would have obstructed plaintiff’s view had she looked north up Front Street at the time she left the west ■side of the street. These automobiles covered a space of approximately 15 feet. Subtracting 15 feet from 52 feet leaves a distance of 37 feet, which is the distance plaintiff walked after she had an unobstructed view of the street, and it took approximately 6 seconds to cover that distance if she was walking at a rate of 4 miles per hour.
 

 Since the Osterland car was running at a speed of, say, 45 miles per hour, or 66 feet per second, it covered a distance of approximately 396 feet after plaintiff reached the point in the street where she had an unobstructed view. If the Osterland car had been running at 25 miles per hour, or 34 feet per second, as provided by the ordinance, it would have covered a distance of only 204 feet after plaintiff entered the street, and would therefore have been 192 feet from plaintiff when she reached the traffic stripe where she was struck. Since the distance from the traffic stripe to the extreme eastern edge of the highway is only 10 feet, it is perfectly clear that, if the Osterland car had been running at the proper rate of speed, the plaintiff would have been on the extreme eastern edge of the highway, in a safe place, when the car was approximately 125 feet from the point where the accident occurred.
 

 The settled rule here and elsewhere is that a pedestrian who attempts to cross a public street or highway has a right to assume, and to act upon the assumption, that motorists will regulate their speed according to traffic rules and regulations, and that a person is not negligent for failing to anticipate that other persons will be negligent. Damonte v. Patton, 118 La. 530, 43 So. 153, 8 L.R.A., N.S. 209, 118 Am.St.Rep. 384, 10 Ann.Cas. 862; Ford v. Tremont Lumber Co., 123 La. 742, 49 So. 492, 22 L.R.A., N.S. 917, 131 Am.St.Rep. 370; Maritzky v. Shreveport Rys.
 
 *432
 
 Co., 144 La. 692, 81 So. 253; Beard v. Morris & Co., 156 La. 798, 101 So. 147; Hamilton v. Lee, La.App., 144 So. 249; Tassin v. Downs, La.App., 190 So. 232; Poindexter v. Service Cab Co., La.App., 161 So. 40; Langley v. Viguerie, La.App., 189 So. 606; Sweeney v. New Orleans Public Service, Inc., La.App., 184 So. 740; Guillot v. Baton Rouge Yellow Cab Co., 18 La.App. 202, 138 So. 219; Langenstein v. Reynaud, 13 La.App. 272, 127 So. 764; Smith v. City of Alexandria, La.App., 178 So. 737. See also 5 American Jurisprudence, p. 758, Sec. 448.
 

 In the case of Ritter, Adm’r v. Hicks et al., 102 W. Va. 541, 135 S.E. 601, 50 A.L.R. 1505, the Supreme Court of West Virginia, in discussing the duty of pedestrians in using the highways, held: “The rights of pedestrians and vehicular traffic, in the use of streets and highways, are generally ‘mutual, equal, and co-ordinate.’ A pedestrian should use ordinary care for his own safety when crossing a street or highway; however, he has the right to assume that others will use a like care to avoid injuring him. Failure to anticipate omission of such care does not render the pedestrian negligent as a matter of law.”
 

 In support of its holding, the court cited and reviewed leading cases from several states of the Union, and such works as Huddy on Automobiles, Berry on Automobiles, and Babbitt on Motor Vehicles.
 

 We think plaintiff did assume that operators of motor vehicles on the street would not violate the traffic regulations, and, so assuming, it was reasonable for her to think she could cross the street in safety.
 

 In view of all the circumstances connected with this case, and the applicable laws, our opinion is that plaintiff was not negligent. This conclusion makes it unnecessary to discuss the last clear chance doctrine.
 

 The rights of pedestrians and vehicular traffic in the use of streets and highways are generally “mutual, equal, and co-ordinate”, and “The general rule is stated that pedestrians have the right to use a public street at any time of day or night. They not only have the legal right to travel in the street, but, in the absence of a restrictive statute or ordinance, may cross or traverse the road at any point and in any direction, and the mere fact that one does so does not render him guilty of contributory negligence as a matter of law.” 5 American Jurisprudence, p. 757, Sec. 447.
 

 The general rule “that all users of the highway have equal rights thereon applies as between automobiles and pedestrians”. 42 C.J., p. 1031, Sec. 778.
 

 For the reasons assigned, the judgment in favor of plaintiff and against the defendants in solido for $10,000 and all costs is affirmed.