On August 6, 1939, at about 6 o'clock a.m. the plaintiff received serious and painful personal injuries, consisting principally of a broken leg near the hip, when the automobile of the defendant backed into her on the roadway of Wisteria street between Lotus street and Franklin Avenue in the city of New Orleans. Claiming that the accident and her ensuing injuries are directly due to the fault of the defendant, in backing his car into her without taking any precautions to observe her presence in the roadway, plaintiff instituted this suit against him for the recovery of damages in the sum of $11,310.
Defendant, while admitting the accident, resisted any responsibility in law to plaintiff on the ground that he was free from negligence in the premises and that he did not back his car without taking all reasonable precautions necessary to assure a prudent driver that the roadway was clear. He further averred that the accident occurred solely through the fault of plaintiff, in that she violated the traffic ordinance of New Orleans by walking in the roadway of a street devoted exclusively to the use of vehicular traffic and in that she heedlessly placed herself in a position of danger in the rear of his automobile at a time when she should have realized that it would be required to make a backward movement. In the alternative, defendant pleaded that, if the court should find that he was at fault in any particular, then plaintiff's recovery should nevertheless be barred by reason of her contributory negligence which is specially set forth.
Following a trial in the District Court on the foregoing issues, there was judgment dismissing plaintiff's suit for oral reasons. Thereafter, at plaintiff's request, the judge assigned written reasons for his judgment, which disclose that he was convinced that defendant was blameless in the premises and that, in any event, plaintiff was guilty of contributory negligence barring her recovery. Plaintiff has prosecuted this appeal from the adverse decision.
On the morning of August 6, 1939, plaintiff, a lady sixty-five years of age, accompanied by Mr. and Mrs. Ernest Duhe, her son-in-law and daughter (the latter having died prior to the trial of the case), attended the 5:30 o'clock mass which was held at St. James the Major Catholic Church located on Lotus street between Gentilly Avenue and Wisteria Street, in the square bounded by Franklin Avenue, in the city of New Orleans. The church is situated on the east side of Lotus street and plaintiff, her son-in-law and daughter went to the services by means of the Duhe automobile which Mr. Duhe parked on the north or left side of Wisteria street approximately 100 feet or so from the corner of Lotus street and faced in that direction. Wisteria street is a two-way blacktopped thoroughfare approximately 20 feet in width with a gravelled shoulder of about three feet on the north or Gentilly Road side. After parking the car in the position above described, plaintiff, her daughter and son-in-law dismounted therefrom and walked to the church on Lotus street. In so doing, plaintiff says that they used the roadway of Wisteria street, instead of the sidewalk, for the reason that there was a large ditch or depression on the north side of the Wisteria street roadway and shoulder, which was covered with an overgrowth of weeds, and that it was difficult for her or any one else to get to the sidewalk without walking through this muddy ditch. She further says that, due to the condition existing on Wisteria street, it was customary for persons, attending services at St. James the Major Catholic Church who parked their cars on Wisteria street, to use the roadway of that street rather than the sidewalk. After the services at the church were concluded, Mr. Duhe left his wife and the plaintiff and went back to his parked automobile, plaintiff and her daughter following him shortly thereafter. It was upon plaintiff's journey back to the Duhe car that she and her daughter stepped from the middle of the Wisteria street roadway to the side thereof and near the rear of defendant's parked automobile. While they were thus positioned, the defendant backed his car and the accident resulted.
Plaintiff testified that, when she and her daughter left the church, they walked to the corner of Lotus and Wisteria streets; that they treaded over the pedestrian crossing at the intersection onto the roadway of Wisteria street in order to avoid the ditch or weedy depression between the sidewalk of Wisteria street and the roadway; that they walked along the roadway of Wisteria *Page 161 
street in the direction of the Duhe car which was parked, as aforesaid, about 125 feet from the corner of Lotus street; that there were several cars parked on the Wisteria street roadway and that, as they progressed along the roadway towards the Duhe car, an ice truck approached them from their rear; that, as the ice truck neared, the driver blew its horn as a signal of his intention to pass them and that, in order to get out of the way of the truck, she and her daughter stepped to the right and into the space between the front of a parked car and the rear of defendant's automobile. She further states that, when she and her daughter stepped in the space between the front of the car which was parked to the rear of the defendant's automobile, she turned to her left to watch the ice truck proceed, it being her intention to re-enter the roadway and continue on to the Duhe car as soon as the truck had passed; that, while she and her daughter were standing in the above-described position, the defendant's automobile, without any warning whatsoever, backed into her and knocked her down in the ditch to the right and that, as a result, she sustained the injuries of which she now complains.
Plaintiff's testimony, concerning the conditions obtaining at the time of the accident and the manner in which it occurred, is substantially corroborated by the evidence of Mr. and Mrs. Lawrence J. Robicheaux, apparently disinterested witnesses, who testified on her behalf. Mr. Robicheaux states, in substance, that he and his wife attended the 5:30 o'clock services at the Catholic church on the morning of the accident; that they were in their car which they parked on Lotus street facing south; that, after the services were concluded, he and his wife repaired to their car which he drove towards the intersection of Wisteria street; that, when he arrived at the intersection, he was compelled to stop due to the presence of the ice truck, which was crossing Lotus street at that time and was proceeding into Wisteria street in the direction of Franklin Avenue; that, as soon as the ice truck cleared the crossing, he followed it into Wisteria street; that, while he was progressing over the roadway of Wisteria street directly in the rear of this ice truck, he noticed at least five automobiles parked on the right-hand or Gentilly Road side of Wisteria street; that he also noticed plaintiff and her daughter walking close to the parked automobiles in the roadway of Wisteria street; that, as the ice truck approached plaintiff and her daughter, the driver thereof blew his horn as a signal of his intention to pass them; that, heeding this signal, plaintiff and her daughter stepped into the space on the right between the front of the third parked automobile and the rear of defendant's car; that this space was about ten feet in length; that, while plaintiff and her daughter were standing there watching the ice truck pass, the defendant, without any warning, backed his car and knocked plaintiff down; that, as soon as he saw defendant's car in motion, he blew his horn as a signal to defendant to stop; that plaintiff's daughter screamed that defendant was killing her mother and beat on the rear of his car with her pocket book (all to no avail) and that, after the accident, he went to the rescue of plaintiff, put her in his car and took her to the hospital. Mr. Robicheaux further testified that the Duhe car, in which plaintiff had come to church, was parked in front of defendant's car and that the space in between the two vehicles was about 15 feet. He also stated that the conditions obtaining with reference to the ditch or depression separating the north side of Wisteria street from the sidewalk were approximately the same as described by plaintiff — that is, that the ditch was about five feet wide and very muddy and that it was covered with weeds at least one foot in height. He further asserted that he had been going to the Catholic church on Lotus street for quite some time and that it was the custom of persons attending the church, who parked their automobile on Wisteria street, to use the roadway of the street in walking to church in order to avoid the ditch.
The testimony of Mrs. Robicheaux is in substantial accord with that given by her husband.
In addition to the foregoing witnesses, plaintiff produced her son-in-law, Ernest Duhe, who attended church with her on the day of the accident. Mr. Duhe confirmed plaintiff's statement that, immediately after the services, he left his wife and the plaintiff at the church and went directly to his automobile. He did not see the accident, although he heard his wife scream at the time it occurred. He further says that defendant's automobile was parked facing his car and directly in front of it and that the space between the two cars was approximately 15 feet. Although the witness states that he saw the defendant *Page 162 
enter his car just prior to the accident, he is quite vague on this point and, considering his testimony as a whole, we gain the impression that he was probably dozing in his car prior to the occurrence and knows very little about it.
Defendant's version of the accident is in such direct contrast with plaintiff's evidence that it portrays an entirely different state of facts and circumstances. In his answer, defendant averred that, at the time he started to back his car, there was no one behind it and that, when he was in the act of backing, plaintiff and her daughter attempted to cross the roadway behind his car at a place where, and a time when, they should have realized it would be dangerous. In other words, defendant suggested, and his counsel during oral argument persist in the suggestion, that plaintiff crossed from the sidewalk of Wisteria street over the ditch connecting the roadway directly in the rear of his car at the time he started to back the vehicle. Of course, if this be true, there can be no doubt that plaintiff, aside from any fault on the part of the defendant, was guilty of gross contributory negligence which would unquestionably bar recovery. Defendant asserted on the witness stand, in his direct examination, that he left his home in his car on the morning of the accident, picked up a young lady friend and drove to Wisteria street, it being his intention to attend the 5:30 o'clock mass; that, when he reached Wisteria street, there were no cars parked on the roadway; that he parked his car on the north or Gentilly side of the roadway facing in the direction of Franklin Avenue at a point approximately 125 feet from the corner of Lotus street; that he and the young lady dismounted from the car, crossed the ditch separating the roadway from the sidewalk, walked over the sidewalk of Wisteria street to Lotus street and thence to the church; that, after the services were completed and upon leaving the church, he and the young lady met an aunt of defendant with whom they engaged in conversation for a short period of time; that, upon the conclusion of the conversation, they walked back to his automobile (via the sidewalk on Wisteria street); that, upon their arrival at his car, he assisted the young lady into the car, went around the front thereof, got in the left side, started his motor, blew his horn and then backed slowly for about three feet when he heard a scream; that, upon hearing the scream, he immediately applied his emergency brake and stopped and that he got out of his car and found plaintiff in a slumped position near the ditch adjacent to the shoulder of the roadway. Defendant further says that, when he returned to his automobile (which is a 1929 Model "A" Ford two passenger Roadster) he noticed that there were three other cars on the roadway of Wisteria street near the scene of the accident; that there was no car parked to the rear of his Ford but there was one parked about 1 1/2 feet in front of it; that, in front of that car there was another car which was parked about a car length ahead of it and that there was still another car (which defendant says was the Duhe car) parked on the opposite side of the street about 75 feet from his car.
On cross-examination, counsel for plaintiff interrogated defendant in detail with respect to his actions on the day of the accident. It was brought out by this examination that two young ladies accompanied the defendant to church instead of one, as he had testified on direct examination and as set forth in his answer to plaintiff's petition. He also admitted that the ditch, separating the sidewalk and the roadway on the north side of Wisteria street, was covered with weeds approximately a foot in height and that it was damp and moist. He further stated that, after he left the church on the morning of the accident and walked to his car with the two young ladies, he helped them into the right side of his automobile; that he thereupon walked around the front of his car and entered its left side; that, after four or five seconds had elapsed, he started his engine, blew his horn and looked into his rear-view mirror for traffic approaching from his rear on Wisteria street and that, upon failing to observe anything in the roadway, he backed his car slowly and struck plaintiff.
To corroborate his evidence, defendant produced Miss Elvina Castay, one of the two young ladies who was in his car on the date of the accident (he having explained in his testimony that he did not bring the other young lady to court with him as she was ill). Miss Castay, who is a sister of the other young lady, testified that she and her sister accompanied the defendant to church on the morning of the accident; that, after the services were over, they walked over the Wisteria street sidewalk to defendant's car; that the defendant *Page 163 
assisted them into the right side of his automobile; that, after he entered the car, he started the motor and backed slowly; that, while he was doing so, she heard a scream and that the defendant stopped the car immediately. She further says that the ditch over which they crossed to get into defendant's car was covered with weeds; that the ground was damp from dew; that she, her sister and defendant were sitting on the front (and only) seat of the automobile; that she was sitting in the middle; that she wore a small hat on the day of the accident; that the defendant blew his horn before he started to back the car and that he always blew his horn. The witness, however, disagrees with defendant as to the space between his automobile and the car parked in front of it. She says that the other parked car was about 11 feet 9 inches ahead of the Ford.
[1-4] The primary question for decision is whether, under the foregoing facts, the defendant did all that was required of a reasonably prudent driver in backing his automobile under the circumstances and conditions obtaining at the time of the accident. The Judge of the lower court accepted defendant's testimony, respecting the precautions taken by him prior to the time he engaged in the maneuver of backing, as the Judge found that, since defendant looked behind his car before he boarded it, sounded his horn, backed slowly after starting his motor and looked through his rear-view mirror while he was backing, he had exercised all of the care that the law required of him. We do not dispute the legal correctness of the view of the Judge that, if defendant did all that he says he did, he was not guilty of negligence but we entertain serious doubt that the testimony in the case justifies the conclusion that defendant took these necessary precautions. We believe that plaintiff has proved, by a fair preponderance of evidence, that, at the time of and just prior to the accident, the roadway of Wisteria street was burdened with considerable traffic; that there were at least two or three automobiles parked to the rear of defendant's car near the intersection of Lotus street; that plaintiff and her daughter were walking in the roadway on the left side of these parked cars and that the ice truck, followed by the Robicheaux car, was proceeding on Wisteria street in the immediate vicinity of where defendant's car was situated; that, confronted with the presence of the ice truck to their rear, plaintiff and her daughter were compelled to leave the travelled portion of the roadway and retire to the space separating the rear of defendant's car from the front of the car behind it for the purpose of permitting the truck to pass ahead of them and that they were within that space prior to the time defendant's car started its backward movement. In view of this finding of fact, it becomes difficult for us to give full credence to defendant's statements that there were no cars parked to the rear of his automobile; that he looked and saw nothing to the rear of his car at the time he and the two young ladies boarded it; that he actually looked through his rear-view mirror for traffic approaching from his rear, prior to the time he started backwards, and that he saw nothing in the roadway. If his rear-view mirror was in proper position, we think that he would have been bound to see the ice truck which was approaching and also the Robicheaux car which was following closely behind it. Furthermore, if his mirror was affixed so as to give him ample view to his rear and if he actually looked into it, it hardly seems possible that he would have failed to notice the presence of plaintiff or her daughter or both of them as they were standing directly in the rear of his automobile. Comment is made by our brother below in his written opinion about a "blind" spot back of the rear wheel of defendant's car and we assume that he means by this observation that, because plaintiff was standing to the right of the rear of the Ford, it was difficult for defendant to get a glimpse of her in that position by looking through his rear-view mirror. If this be so, then our answer is that he should not have relied entirely upon the limited vision afforded him by the rear-view mirror and that he should have taken additional precautions to obtain a full view to his rear before he put his car in motion. However, we find nothing in the evidence to indicate that plaintiff's position to the right of defendant's automobile was such that, with a correctly positioned rear-view mirror, he was unable to obtain a view of her. And the evidence, while indefinite as to where her daughter was standing, does not eliminate the probability that she was in a space where she could have been readily observed, if defendant had taken the precaution to look. In this connection, we' think it significant to remark that, whereas defendant stated in his answer and *Page 164 
testified on direct examination that there was only one young lady with him in his automobile, he conceded, under cross-examination, that two young ladies were occupying the car with him. Why did not defendant make a disclosure of the true circumstances prior to the time he was placed under cross-examination? It could be suggested that he might have felt that a disclosure of this fact might militate against his testimony concerning the precautions taken by him as it is evident that, since he was driving a two-seated roadster in which three people were riding, the presence of three people in the car could easily interfere with his ability to obtain a clear vision through his rear window. But, whatever be defendant's reason, the fact remains that he says that he looked and did not see anything when it seems perfectly clear to us that, if he had looked and if his vision was unobscured, he would have unquestionably observed plaintiff and her daughter, the on-coming vehicles to his rear and other surrounding conditions which he says he did not see. To look and not see, when one should see, is the equivalent of not looking at all.
[5, 6] The law of the case with reference to the precautions a motorist must take when backing his vehicle is clear. It is, of course, not negligence to back a car. See Hahn v. P. Graham Co., 148 La. 55, 86 So. 651; Huddy's Encyclopedia of Automobile Law, Vols. III-IV, Section 133, pp. 218-220. However, a motorist is charged with the duty of exercising ordinary care to see that the maneuver will not injure the persons or property of others. By ordinary care, we mean the degree of caution which would be observed by reasonably prudent persons under similar conditions. And no hard and fast rule can be laid down in matters of this sort for, in common with all actions based upon negligence, each case must stand upon its own particular facts and circumstances.
[7] In the instant matter, the facts disclose to our satisfaction that it was the usual practice for quite a number of the congregation of St. James the Major Church, attending by automobile, to park their cars on Wisteria street; that, because of the condition of the ditch or depression on the north side of the roadway of the street which connected with the sidewalk, it was the custom for many persons to use the roadway of Wisteria street to walk to and from the church; that defendant had been attending the church over a period of approximately two years prior to the accident and was either well acquainted or should have been cognizant of these facts; that, because of this, he owed to pedestrians and other vehicles using Wisteria street the duty of taking reasonable precautions so that any movement by him of his automobile would not endanger their persons or property and that he failed in this duty, either because of his inattention to the conditions presented to him at the time of the accident or because his rear-view mirror was faultily positioned or constructed or because he could not obtain a view to his rear due to the overcrowding of his automobile.
Since we find that the defendant was at fault, we pass on to a consideration of the plea that plaintiff was guilty of such contributory negligence as to bar her recovery. This plea is based upon plaintiff's asserted violation of the City Traffic Ordinance (No. 13,702 C.C.S.) in walking upon the vehicular roadway and also upon the contention that she stepped in the rear of defendant's automobile at a time when he had no reason to anticipate that she would place herself in such a perilous position.
[8] Before we consider the applicable provisions of the traffic ordinance respecting the rights and duties of pedestrians in their use of city streets (Article IV thereof), we think it well to observe, at the outset, that the general rule of law is that, in the absence of statute or ordinance, the rights of pedestrians and vehicular traffic in the use of streets and highways are mutual, equal and co-ordinate. In the recent case of Law v. Osterland, 198 La. 421, 3 So.2d 680, 684, our Supreme Court recognized this doctrine and quoted with approval from 5 American Jurisprudence, p. 757, section 447, as follows: " 'The general rule is stated that pedestrians have the right to use a public street at any time of day or night. They not only have the legal right to travel in the street, but, in the absence of a restrictive statute or ordinance, may cross or traverse the road at any point and in any direction, and the mere fact that one does so does not render him guilty of contributory negligence as a matter of law.' " To the same effect see 42 Corpus Juris, p. 1031, § 778.
[9] Thus it will be seen that, unless the City Traffic Ordinance relied upon by defendant has prohibited the use of the street *Page 165 
by pedestrians, plaintiff had the legal right to walk thereon; that her right was coextensive and mutual with that granted to vehicular traffic and that, in so doing, she was not guilty of negligence as a matter of law. Article IV of the Traffic Ordinance sets forth the rights and duties of pedestrians in their use of the streets of the city of New Orleans. They are required to obey all police regulations, signs, semaphores and other traffic devices; they are given the right of way over vehicular traffic at certain intersections or crossings designated for their use and paragraph 4 of Article IV, which prohibits "Jay Walking", declares: "Pedestrians shall cross streets only at street intersections or cross walks and shall not cross street or cross walk intersections diagonally." We find nothing in the ordinance which directly prohibits the use by pedestrians of the streets of the city even though sidewalks are maintained specifically for their benefit. Therefore, in view of the general rule of law concerning the mutual rights of pedestrians to use the streets and highways, it cannot be said that plaintiff was guilty of negligence as a matter of law in walking over the roadway of Wisteria street. The city ordinance, as above pointed out, merely prohibits jay walking which it defines to be the crossing of the street by a pedestrian at a point other than the usual pedestrian cross-walk. And we can well see why the framers of the ordinance did not desire to deprive pedestrians of their general right to use and walk in the public streets — for, if this right had been wholly restricted, any one parking his automobile in the middle of a city block and in a proper parking zone would be negligent if he stepped into the street for the purpose of entering the left or driver's seat of the vehicle.
[10-12] Since we are of the opinion that plaintiff was not guilty of negligence per se in using the roadway of Wisteria street to walk to her car on the morning of the accident, the question arises whether she was at fault as a matter of fact. We do not think so. The evidence offered in her behalf is sufficient to sustain her contention that it was customary for persons to use the roadway of Wisteria street, in preference to the sidewalk, in going to and from church because of their inability to negotiate the ditch separating the roadway from the sidewalk without risking damage to their clothes or their persons. In addition, we take notice of the fact that it is a common practice for persons congregating in public places for church meetings, lectures, sporting events and other gatherings to disperse into the city streets when the event has been concluded. Of course, in the use of the street by such persons, a duty of care is placed upon them, as well as the operators of vehicles, to refrain from unnecessarily endangering themselves or others. In the instant case, the plaintiff and her daughter, while walking on the roadway at apparently a slow pace, were required to move aside in order to permit the ice truck to pass. They did, we think, what any ordinarily prudent person would do, i.e., they moved off the portion of the roadway being used by vehicles in motion over to the right and into the space between the rear of defendant's car and the automobile parked behind it. We cannot see that it was negligence for them to adopt this course.
[13] But, apart from our view that plaintiff was not guilty of contributory negligence, we are convinced that, should it be deemed that she was at fault in any particular which had direct or causal connection with the accident, defendant had a last clear chance to avoid the mishap. The evidence produced by plaintiff establishes that, at the time she and her daughter positioned themselves in the space behind defendant's car, defendant had not yet started his backward movement. Therefore, he had a last clear chance, if he had exercised the precaution required of him, to have discovered their presence in the rear of his car in ample time to have avoided the accident.
[14] There is another circumstance in this case, in addition to those above pointed out, which seems to confirm our holding that defendant exercised little care, if any, in the situation presented to him. Plaintiff's witnesses testified that there was a space of approximately 15 feet between the front end of his car and the automobile parked beyond it. Their evidence is substantially confirmed by Miss Castay, defendant's own witness, who says that the space was about 11 feet, 9 inches. Defendant, and defendant alone, denies this as he testifies that the space was only one and one-half feet. But the other evidence, in our estimation, clearly preponderates. In such circumstances, the backwards movement was wholly unnecessary as the small Ford car could have easily been driven forward from its parked position *Page 166 
with a clearance space to the front of over ten feet.
Being of the opinion that the defendant is liable, we next consider the quantum of damages to which plaintiff is entitled. The main injury sustained by plaintiff is described by her physician, Dr. George C. Battalora, an expert orthopedic surgeon, to be a fracture of the right femur at about the middle third. Dr. Battalora says that the initial treatment, which was given plaintiff at Mercy Hospital on the day of the accident, consisted of the insertion of a wire through the condyle of the lower end of the right femur to produce traction on the fracture; that this treatment was continued for about a month when a cast was applied; that the cast was removed on November 30, 1939 and, after discovering that union was not taking place at the site of the fracture, plaintiff was rehospitalized on December 5th and an open reduction was done and that a metal plate was applied. He further asserts that, after this operation, plaintiff remained in the cast for three months and that a trace was applied for approximately six months thereafter; that she used crutches until August 1, 1941 and that, on his last examination in October 1941, she was still using a cane. When asked whether, at the time of his last examination in October 1941, he was of the opinion that plaintiff had fully recovered from her injury, the doctor replied "No, sir; she hadn't fully recovered. The fracture had firmly united. There was marked stiffness in the right knee. There was practically no motion in the knee joint; motion in the hip was normal. There was still some swelling noted in the extremity. I attributed the stiffness in the knee joint to the prolonged immobilization which was necessary in this case." Further on in his testimony, Dr. Battalora voices the opinion that the stiffness in plaintiff's knee joint will be permanent.
[15, 16] It is plain from the foregoing evidence, which is not contested by defendant, that the injury sustained by plaintiff was not only serious, and of long duration, but permanent and that plaintiff would ordinarily be entitled to a very substantial award in damages. On the other hand, since it has been shown that the defendant owns no property, other than the Ford automobile, and that, while he is not impecunious, his ability to respond in damages is limited, we realize that these facts should be given consideration in determining the damages to be assessed. After due deliberation, we believe that an award of $2500 for plaintiff's injuries, pain and suffering will suffice. In addition to this, plaintiff is entitled to recover for the expenses she has incurred for her treatment which was stipulated by the parties to be $677.52.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment herein in favor of plaintiff, Mrs. Corinne Neyrey, widow of Paul E. Smith, and against defendant, Alfred W. Maillet, in the full sum of $3177.52 with legal interest thereon from judicial demand until paid, and all costs.
Reversed.