BOLIN, Judge.
Jimmie V. Valentine received personal injuries in an automobile accident which occurred in a lot adjoining Weaver’s Cafe, located near Oil City, Louisiana.
On February 20, 1959, at about nine o’clock in the morning, plaintiff was driving *219 north on Highway No. 71, when he decided to stop at the drive-in cafe for a cup of coffee. A pickup truck, owned by the defendant, J. D. Marcom Service and Supply Company, was parked in the drive-in portion of the cafe; same being parallel to the highway and facing south. As the plaintiff turned off the highway and into the parking area of the cafe, his automobile was struck by the defendant’s pickup truck as it was backing across the lot preparatory to leaving. The plaintiff brought suit against J. D. Marcom Service and Supply Company as the owner of the truck and employer of its driver, and against Trader & General Insurance Company, the liability insurer of the truck. ' Liability on the part of the defendant was predicated on the negligence of the operator of the pickup truck in backing it across the lot into the vehicle being driven by the plaintiff.
The answer of the defendant, in the lower court, consisted of a general denial and a special plea of contributory negligence. The trial of this case was before a jury, resulting in a verdict for the defendants, and the plaintiff has appealed to this Court.
Before getting into an analysis of the facts, it would be well to set forth certain principles of law pertaining to “back-up” cases in general.
The same general rules of law apply to the operator of a motor vehicle who is executing a backing maneuver as is required of him when he is driving his automobile forward, except that an extra degree of care is required under certain circumstances.
Blashfield’s Cyclopedia of Automobile Law and Practice, Vol. 2, Section 1101, correctly states the rule thusly:
“ * * * the driver must exercise care in backing his machine so as not to injure others by the operation.” “ * * * The question of whether, in backing an automobile, the operator has exercised the degree of care rendered necessary by the circumstances of the case, is generally one of fact.”
60 C.J.S. Motor Vehicles § 302, states the same rule in the following language :
“A motorist in backing his vehicle must exercise ordinary care so as not to injure others by the operation, and he must take the necessary precautions to see that the movement may be made in safety, as by keeping a lookout and signaling when reasonably necessary.”
The above statements of law have been generally approved and recognized by the cases decided in our Louisiana courts. In the case of Neyrey v. Maillett, La.App. Orleans 1945, 21 So.2d 158, at page 164, the following language was used:
“The law of the case with reference to the precautions a motorist must take when backing his vehicle is clear. It is, of course, not negligence to back a car. See Hahn v. P. Graham & Co., 148 La. 55, 86 So. 651; Huddy’s Encyclopedia of Automobile Law, Vols. III-IV, Section 133, pp. 218-220. However, a motorist is charged-with the duty of exercising ordinary care to see that the maneuver will not injure the persons or property of others. By ordinary care, we mean the degree of caution which would be observed by reasonably prudent persons under similar conditions. And no hard and fast rule can be laid down in matters of this sort for, in common with all actions based upon negligence, each case must stand upon its own particular facts and circumstances.”
Another Louisiana case that enunciates the proper rule to be followed in these “back-up cases is: Dipino et ux. v. Joe Gulino & Son, La.App.Orleans 1934, 154 So. 772.
Although the gravamen of this dispute is concerned with the sequence of events *220 on the morning of the accident, and their legal significance, the undisputed facts developed by all party litigants revealed that on the morning of the accident Jimmie Valentine set out from his home in Shreveport traveling toward Arkansas. Contemporaneously with this event, Charles Caldwell set out from his home in Gilliam driving an empty pickup truck owned by his employer, J. D. Marcom, and insured by the codefendant, Traders General Insurance Company. Caldwell arrived at Weaver’s Cafe and parked his truck facing South in the cafe’s parking area, a short distance from and parallel to the highway. Caldwell then entered the cafe where he remained for approximately an hour. When Caldwell emerged from the cafe he proceeded to his automobile and, because a vehicle owned by his friend, Edmondson, was parked directly in front of and to the South of his truck, he drove his truck to his rear and right. As Caldwell backed his truck, its rear left bumper and fender collided with the left rear fender of Valentine’s automobile producing the injuries which form the core of this judicial claim. Valentine had arrived at the parking lot from the south, had made an angular left turn from the highway onto the parking area, and was passing to the rear of Caldwell’s truck when the collision occurred. The accident occurred about nine o’clock in the morning.
These events in general are accepted by both sides. In its denial of liability, however, defendants attempted to show that prior to his backward movement Caldwell took all necessary safety precautions. Under the plea of contributory negligence, it was contended that the backing process was well under way when Valentine entered the parking area.
The testimony in the case as to how the accident happened was given by the two drivers of the vehicles involved in the accident, and by Allen T. Edmondson, the latter being the driver of an automobile that was parked directly in front of the pickup truck. Mr. Valentine’s version of how the accident happened is, of course, contrary to that given by the driver of the pickup truck. He testified that he was driving north along the highway in question, and that when he turned left into the drive-in lot, the pickup truck was not in motion. It was, therefore, his theory that the truck did not begin its backing operation until he was directly behind it, which would thereby make the accident due solely to the negligence of the operator of the truck in not taking any precautions before his backing operation.
Mr. Caldwell, the driver of the pickup truck, on the other hand, contends that the accident was caused solely by Mr. Valentine turning to the left off the highway and onto the parking lot at a time when he had already begun his backing operation. He testified that he looked through the rear-view mirrors, which were located on the front fenders of his pickup, before he began the backing operation. Having ascertained that the way was clear, he began backing at a speed of approximately three miles per hour. He further said that he had only traveled about ten feet when he collided with the rear of Mr. Valentine’s car. His reason for not seeing the car behind him was that it was traveling much faster than his vehicle and, therefore, was simply not behind him when he began his backing maneuver.
Mr. Edmondson testified generally to the same effect as Mr. Caldwell. However, he necessarily did not see as much as the operators of the two vehicles involved in the accident. He did state, however, that Mr. Caldwell had not moved more than ten feet at the time of the impact, and was backing very slowly. He also contradicted the assertion by Valentine that the rear window of Caldwell’s pickup truck was frosted over because of the cold weather.
In cases such as this, where the testimony is conflicting, it is the primary duty of the trial court to pass on the credibility of the witnesses, and to arrive at a *221 conclusion of the true facts. The jury, in this case, apparently arrived at a conclusion that the version of this accident, as given by the plaintiff, was not exactly correct in all of its details. There is no way for this Court to know whether the jury rejected the demands of the plaintiff on the theory that the accident was due entirely to the negligence of the plaintiff, or whether it sustained the plea of contributory negligence.
After examining all of the evidence before us, we are not convinced that the findings of the lower court were manifestly erroneous and, therefore, its holding should not be reversed on appeal. There can certainly he found sufficient evidence to sustain the plea of contributory negligence. While we do not feel that it is necessary for us to discuss all of the evidence submitted to the jury, we do feel constrained to point out certain salient facts in order to show that no manifest error was committed by them.
We are inclined to believe that the driw er of the pickup truck was not entirely free of fault as he would have the court to believe. He owed a duty, in backing his automobile, to maintain a constant lookout to his rear, and had he done this, he could have avoided the accident. It is reasonable to believe, from the evidence, that he looked through his rearview mirrors, and seeing no one, he began his rearward movement, hut did not continue to keep a lookout. The plaintiff, on the other hand, was guilty of negligence, and because his negligence was also a proximate cause of the accident, the jury was justified in rejecting his demands. He testified that he turned to the left and proceeded to the rear of the pickup truck at a speed of fifteen or twenty miles per hour. He further testified that the pickup was not in motion at the time he began passing to its rear. However, he further testified that before he turned to the left, he did not see the truck in question, nor did he see Mr. Caldwell or Mr. Edmondson. Conceding that the driver of the pickup was negligent in not keeping a proper lookout, the plaintiff was guilty of the same negligence. In other words, he could not possibly have been keeping a lookout if he did not see the pickup truck, or either of the two men. If he did not see the truck, he certainly could not testify that it was not in motion when he passed behind it. It, therefore, seems very likely that the pickup was in movement when the plaintiff passed to its rear. The reason that the plaintiff’s vehicle was struck on its left rear quarter section, was because it was obviously traveling at a much faster speed than the pickup.
From the above resume of the testimony, we are of the opinion that the holding of the lower court was not manifestly erroneous and is, therefore, affirmed, at appellant’s cost.