422 So.2d 232 (1982)
Dondra SANDERS
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 13269.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
*234 Robert L. Manard, III, Manard, Schoenberger & Ryan, New Orleans, for plaintiffappellee.
James Maher, III, New Orleans, for defendant-appellant.
Before KLEES, BYRNES and WARD, JJ.
KLEES, Judge.
Defendant, New Orleans Public Service, Inc., (NOPSI), appeals from a judgment awarding damages to plaintiff, Dondra Sanders, sustained while she was a farepaying passenger on defendant's bus.
The issues presented on appeal are (1) whether the actions of the plaintiff should bar her recovery under the theories of contributory negligence and/or assumption of the risk; and (2) whether the award rendered to her for general damages is excessive.
On May 9, 1979, plaintiff was returning home from school on a NOPSI bus. As the bus proceeded on its route, it made some sudden, "jerky" stops as well as other normal service stops. As the bus approached the plaintiff's service stop, she stood up in the aisle, braced herself, and prepared to disembark. The bus came to another "jerky" stop and the plaintiff was thrown to the front of the bus where she sustained her injury.
She was examined and treated for her injuries by Dr. Joseph Braud in the Flint-Goodridge Hospital emergency room. This examination took place on the day of the accident and revealed that the plaintiff had sustained a lumbosacral strain; i.e., a strain in the lower back. Plaintiff was again examined by Dr. Braud the day after the accident, and from then through June 4, 1979, she received treatment in his office on numerous occasions. On June 4, 1979, she was discharged by Dr. Braud.
On September 19, 1980, after complaining of intermittent pain and stiffness in her back, plaintiff went to see Dr. Stuart Phillips, an orthopedic specialist. Dr. Phillip's basic diagnosis was that the plaintiff had suffered a lumbar strain and, as a result of the healing process, the lumbar region had scar tissue. At trial he testified that when muscles and ligaments with scar tissue are used "a lot", pain results. The doctor concluded that the plaintiff will experience some pain during extreme activity the rest of her life.
The trial court found NOPSI negligent and, after considering the medical testimony, it rendered judgment in favor of the plaintiff for $4,828.00 including $578.00 for medical expenses.
Our review of the pleadings show that defendant NOPSI answered plaintiff's suit with a general denial and specifically pled the defense of sudden emergency.
LSA-C.C.P. Article 1005 requires that the answer set forth any affirmative defenses on which a party will rely. Defendant's answer failed to set forth the defense of contributory negligence or assumption of risk.
"However, the rule pertaining to an automatic amendment of the pleadings does apply when evidence of an affirmative defense is adduced without objection from the opposing party. Our Supreme Court in DLJ of Louisiana # 1 v. Green Thumb, Inc., 376 So.2d 121 (La.1979), recognized this in Footnote 9 on page 122, where the Court stated:
`... Generally, affirmative defenses must be raised in the answer of the defendant, see La.Code Civ.P. art. 1005, and cannot be raised by the court sue sponte. Where, however, an affirmative defense has not been pleaded by the defendant but the plaintiff nevertheless fails to object to the introduction of evidence that bears on the affirmative defense and that is not pertinent to any issues raised in the pleadings, the pleadings have been considered to have been enlarged to include the affirmative defense, and the court can act as though the affirmative defense has been pleaded. See Austrum v. Baton Rouge, 282 So.2d 434 (La.1973).'" Independent, Inc., v. Watson, *235 394 So.2d 710 (La.App. 3rd Cir. 1981).
Here there was no objection made to the evidence pertaining to these defenses either at trial or in brief before this court. Thus we will consider these issues.

Contributory Negligence
A carrier is required to use the highest degree of care, diligence, and skill and is liable for the slightest negligence or lack of care, which results in injuries to its passengers; but the passenger must not contribute to his injuries by any want of ordinary care on his part. Gaines v. Aetna Casualty & Surety Co., 110 So.2d 851 (La.App. 1st Cir.1959). As in the case before us, contributory negligence by the plaintiff would bar her recovery despite the high degree of care owed by a carrier.
Contributory negligence is objectively determined under the reasonable man standard. Mc Innis v. Fireman's Fund Insurance Co., 322 So.2d 155 (La.1975). The victim is required only to use reasonable precautions, and his conduct in this regard is not negligent if, by a common-sense test, the conduct is in accord with that of reasonably prudent persons faced with similar conditions and circumstances. Dupas v. City of New Orleans, 354 So.2d 1311 (La. 1978).
The record reveals that the plaintiff did use reasonable precautions after leaving her seat. She grasped a pole behind her seat and also braced her feet in preparation for the stop of the bus. Counsel for defendant argues that despite these precautions, plaintiff was contributorily negligent because she should have waited for the bus to completely stop before leaving her seat. This logic is contrary to the common-sense test enunciated in Dupas, supra, and contrary to our jurisprudence. In Tomasik v. Shreveport, 98 So.2d 554 (La.App. 2nd Cir. 1957), a plaintiff, who arose from his seat to disembark at the next service stop, walked to the front of the trolley supporting himself by holding a vertical handrail, sustained injury when the trolley came to an abrupt stop. In concluding that the plaintiff was not contributorily negligent, the court stated:
"... the plaintiff was following custom and general practice, concerning which there was no rule to the contrary, and which practice tended to expedite the service by prompt departure of passengers from the trolleys." Tomasik, supra, at 556.
In this case, as in Tomasik, the plaintiff was simply following custom and general practice by leaving her seat before the bus stopped. Her action was in no way contributorily negligent.

Assumption of the Risk
The determination of whether a plaintiff has assumed a risk is made by a subjective inquiry. Bass v. Aetna Insurance Company, 370 So.2d 511 (La.1979). In order to assume a risk, one must knowingly and voluntarily encounter the risk which causes him harm, understand and appreciate the risk involved and accept it as well as the inherent possibility of danger because of the risk. Lytell v. Hushfield, 408 So.2d 1344 (La.1982).
However, the general rule has been qualified when a common carrier is involved. In that case, the risks adopted by a passenger are only those which cannot be avoided by the carrier through the use of the utmost degree of care and skill in the management of the conveyance. Peters v. City of Monroe, 91 So.2d 428 (La.App. 2nd Cir.1956), Harris v. Shreveport Railway, 83 So.2d 517 (La.App. 2nd Cir.1955).
The trial court found and defendant concedes, that the bus operator was clearly negligent by his improper use of the emergency brakes. Thus, the risk of "being thrown to the floor" could have been avoided if the bus driver had used the utmost care and caution. Under the rational of Peters, supra, such a risk cannot be assumed by a passenger. We conclude that the defendant's defense based on the theory of assumption of the risk in this case is without merit.

*236 Quantum

In determining whether the "much discretion" of the trial court in awarding damages has or has not been abused, the initial inquiry must be directed at whether the trial court's award for the particular injuries on this particular person was a clear abuse of discretion. Only if there was a clear abuse of discretion can the court consider prior awards for similar injuries. Reck v. Stevens, 373 So.2d 498 (La.1979).
After careful consideration of the record, the amount of the award by the trial court cannot be labeled a clear abuse of its "much discretion". Plaintiff suffered a muscle contusion and strain of the lumbar-sacral spine. She underwent periodic treatment for this injury for a period of three weeks. After experiencing intermittent pain for approximately 15 months, she went to another doctor who concluded that the recurring pain was a result of the healing process from the earlier injury. He stated that the plaintiff would always be susceptible to such pain after extreme activity or exercise. Prior to her injury, the plaintiff was active in sports and dancing, and had never experienced any back pain after physical activities. Now, her physical activities are somewhat restricted. Based on these facts and the medical testimony of the doctors, the original award for general damages of $4,250.00 is not excessive.
Accordingly, the judgment of the trial court is affirmed. Costs are assessed against defendant.
AFFIRMED.