BREAUX, C. J.
Plaintiff’s demand is for damages in the sum of $5,000. Of this sum, $2,500 is claimed for the loss of her son, the sorrow and grief occasioned thereby, and $2,500 for the affection and companionship of which she has been deprived by his death.
Plaintiff, prior to her marriage with Siefker, was the widow of the late George Stumborg, and her son Gustave, was the issue of her marriage with the late George Stumborg.
Plaintiff’s charge for damages is that her son was wantonly and recklessly shot and killed by defendant, by whose fault, she says, the gun he held in his hands was discharged *491 and inflicted a wound which caused death in a few minutes.
Defendant admits that plaintiff’s son was killed by the gun he held and was handling at the time, but he denies that he is liable in damages.
The judge of the district court, before whom the case was tried without a jury, rejected plaintiff’s demand.
On the morning of the 20th of September, 1904, defendant, Sylvan, his son, plaintiff’s son Gustave, and another boy, Albert Weiser, crossed the river from the city on their way to Westwego to hunt birds.
The boys had joined the defendant, with his permission. They were about the same age, 14 years, and about the same size, except defendant’s son, who was a little larger.
None of the boys had guns, except the son of plaintiff, who had a 22-caliber Monte Christo rifle. The defendant’s gun was a hammerless breech-loading central fire.
They repaired to the woods, and when about to enter the woods they stopped under a large willow tree. They saw rice birds at a little distance. The boys were standing on the left of defendant. The son of plaintiff was first in front of the other boys. The defendant said to his son, “Hand me two cartridges,” which were handed over to him. Upon receiving the cartridges from the hand of his son, he turned around and placed one in each of the barrels and then turned and closed his gun. As it was closed, one of the cartridges exploded and killed the plaintiff’s son, who was standing in front of defendant at the moment.
We will not stop to consider the purpose which prompted the defendant to go hunting and the feeling which actuated him in complying with his young son’s request, permitting the other two boys to accompany him, as there was nothing about it either unlawful or improper.
The gun of defendant was not defective. He bought the cartridges from a dealer in ready-made cartridges.
The evidence does not show that the cartridges were defective in appearance. It was stated in evidence that sometimes shells are defective, and the defect is very seldom detected by those who buy and use them, and the evidence further disclosed that, owing to the defectiveness of the shell, guns sometimes' explode accidentally.
With reference to the act of loading the gun, the defendant and the two boys, Sylvan, defendant’s son, and Weiser, one of Sylvan’s companions, agree in the statement that the defendant, after placing the shells in the barrels, turned to an opposite direction from that at which the boys were standing on his left and that as he turned he brought the barrel of the gun to its proper position — i. e., closed it — and that it was at that moment that the gun fired and struck plaintiff’s son in the back.
There is an exception to this corroboration.
After having corroborated the statement above as to where defendant, his father, was standing, defendant’s son, at another time testifying, says that some of the shot struck him; and this, although he had stated that, had the deceased remained where he and his little companions were — i. e., on the left of his father — he could not have been killed.
This boy, Sylvan, further states that he was struck by the shot and that powder hit his face.
We do not reconcile the contradiction. If this last statement be correct, then the theory of the case should be different from that which struck us as the correct theory after having read the first part of the testimony of this witness, and the testimony of the defendant and that of the boy Weiser.
The witness Weiser said:
“The boy run right in front of the gun, and said that he wanted to shoot. I saw where he went in the weeds over here by a gate.”
*492 He further states that the deceased was about two or three yards from defendant when he was struck and killed.
To this point of the case, in reading the testimony, we have not found that defendant can be held liable.
Taking for granted that he turned in order to avoid the possibility of hurting the boys, who were, as he thought, on his left, can he be held liable for not noticing that the deceased was no longer on his left, but in front of the gun?
He was not looking in that direction. The change of the deceased’s position from left to front may have been quickly made, and in the hurry of the moment the mind can conceive that a gun may be closed by a person by whom it is handled without his looking to the front while he is engaged in bringing it to a close.
If the defendant'had just seen the boys on the left, it was not unreasonable or imprudent on the part of the defendant to act as he did.
In order to be entitled to recover, it must appear that the death was by wrongful act.
Plaintiff’s counsel cite the ease of Chataigne v. Bergeron, 10 La. Ann. 699, in which defendant owned to witness that he had a quarrel with plaintiff; that he and plaintiff had met one evening at dark, each armed with a gun; that he stooped to pick up a stick, when his gun fired.
The court said:
“Without recapitulating the statement made by the defendant himself, it may be sufficient to say that, assuming its truthfulness, he would not be relieved from liability for damages incident to this gross neglect in handling a gun.”
And sustained the verdict for plaintiff.
There was a wrong, gross neglect, found In this and other cases we have had occasion to examine and in which the court pronounced for liability.
Before concluding, we will state that the casualty should by consistent statement be traceable to actionable negligence.
The judge of the district court saw and heard the witnesses. The witnesses described fully the different phases of the casualty. The witnesses had the gun of defendant while they were in court. They testified regarding the motions and gestures of the parties.
We have noted that the little boy — that is, the deceased — had a gun and said that he wished to shoot. There were rice birds about or in sight. The deceased, according to the testimony of one of his little companions, said that he wished to shoot, and that he saw the deceased step forward and to the front of where the defendant was standing. In turning aside to close the gun, as before stated, the defendant’s eyes may have been directed to the gun, instead of in the direction of the boy. It should appear, with reasonable certainty, that he saw the boy move, and that he none the less closed the gun.
The act of defendant prior to the time of and immediately after the casualty was not negligence. Guns will sometimes go off without apparent cause. To say the least, there is a decided uncertainty. The defendant and the boys were gunning together.
In a case decided in another jurisdiction, the court held that in no case is it said that, where persons are gunning voluntarily together, each may be held responsible for every accident or mishap.
“If one should pass in front of the other by his request or motion, and by stumbling or falling the gun of the other is discharged and a wound inflicted, it does not follow that the only question to be considered is the amount of damages. Each case must stand upon its own peculiar facts, and rational, rather than distinctively legal, conclusions must usually be drawn from them.” Moebus v. Becker, 46 N. J. Law, 41.
We have given the case our careful attention. We have not found the defendant guilty of the negligence and wrong charged.
*493 Por the reasons assigned, the judgment appealed from is affirmed.
MONROE, J. I respectfully dissent.
PROVOSTY, J.' I concur with Justice MONROE.