These are suits for damages arising out of an intersectional collision between an automobile driven by plaintiff Allen, accompanied by plaintiff Sartor, and an automobile owned by defendant Peters but operated by his employee, defendant Tillman, in the scope of his employment. These suits were consolidated for trial in the lower court; and were consolidated when argued and submitted in this court.
As a result of the collision plaintiff Allen sues for damages in the sum of $14,265 and plaintiff Sartor sues for the sum of $13,310, alleging that the accident is attributable solely to the fault of the driver, Tillman. The defendants are James Tillman, the driver of the automobile which struck the automobile in which the two plaintiffs were riding, F. Lisle Peters, for whom Tillman was working and driving the automobile on a mission for his employer, and the liability insurance carrier on the automobile driven by Tillman.
The defendants admit the happening of the accident but resist plaintiffs' demands for the reason that the collision was due to the fault of plaintiff Allen, and they further plead, in the alternative, if the court should find that Tillman was negligent in any particular, then that plaintiff Allen's contributory negligence bars his recovery; and also that plaintiff Sartor cannot recover because of the contributory negligence of Allen and the fact that both plaintiffs were engaged in a joint venture and for the further reason that Sartor was guilty of independent negligence. It is conceded that all defendants are liable if Tillman is liable.
After trial in the lower court, judgment was rendered in favor of Allen for the sum of $3,940 and in favor of plaintiff Sartor in the sum of $3,035. The defendants have appealed. Each plaintiff has filed an answer to the appeal asking that the judgments be amended so as to allow each the amount of damages claimed in their petition.
The accident occurred just at about four o'clock on the afternoon of September 23, 1939. The two plaintiffs were riding in a car driven by Allen going south on a partially graveled road known as "South Common Street" just south of Lake Charles. They were on the joint mission of collecting chattel mortgage notes due the Calcasieu Chevrolet Corporation by whom Allen was employed and the General Motors Acceptance Corporation by whom Sartor was employed. Driver Tillman was going east on an intersecting road known as the "Bill Scaife's Road", driving a Lincoln Zephyr Sedan. The collision occurred in the southwest corner of the intersection, the Lincoln Zephyr striking the Chevrolet Coupe, in which plaintiffs were riding, on the right front wheel and fender, throwing it across the intersection and some distance east of the Southeast corner of the intersection.
It appears from the map and pictures in the record that the traveled part of the Common Street Road going south is about 16 feet wide, and from ditch to ditch is 35 *Page 179 
feet and that the distance between wire fences on each side of the road just north of the intersection is 50 feet. The traveled part of the "Bill Scaife" road is 22 feet wide with ditches on each side. There is also a wire fence on the north side of this road some 25 feet from the center of the road. At the northwest corner of the intersection there were some weeds which do not appear to be quite as high as the wire fence at this corner and which did not seriously obstruct the view of either driver in approaching the intersection. We will use the corner of this fence as the northwest corner of the intersection in discussing the accident and the view, distances and location of the two cars.
Judging from the map, we would estimate the distance from the corner of this fence to the center of the intersection at 35 or 40 feet. A motorist approaching from the north on reaching a point east of this corner could see down the Bill Scaife Road to the west several hundred feet, and likewise, a motorist approaching from the west on reaching a point opposite this corner of the fence could see up the Common Street Road several hundred feet. The Bill Scaife Road is much more traveled and has more gravel on it than the Common Street Road.
Allen testified that he was going from 15 to 20 miles per hour as he approached the intersection; that he looked both east and west and did not see any car approaching and proceeded across; that the Lincoln Zephyr struck the rear part of the right front fender of his car when he was in the southwest part of the intersection; that he did not see the other car until about the time of the impact. From his testimony, it would appear that the collision occurred several feet southwest of the center of the intersection, and his car was thrown or pushed some 35 or 40 feet east and beyond the east margin of the intersection.
Sartor, who was sitting to the right of Allen, testified that they were driving about 15 miles per hour as they entered the intersection; that he did not see the Lincoln Zephyr as they entered the intersection, but saw it when they were in the southwest corner of the intersection just before the impact and when the Lincoln Zephyr was about 40 feet away; that the other car was going about 60 miles per hour; that Allen did not put on his brakes or try to stop before his car was struck.
James Tillman testified that he was driving east on the Bill Scaife Road in the Lincoln Zephyr at about 40 miles per hour; that he saw the Chevrolet just before entering the intersection and then applied his brakes; that the two cars reached the intersection at about the same time; that he did not slow up for the intersection; that he pulled his car to the right when he saw he was going to hit the Chevrolet and struck it beneath the front fender and knocked it east across the intersection; that he was traveling on the right side of the road and the other car was near the center of the road.
Mr. Peters testified that he reached the scene of the accident shortly after it occurred and saw signs on the road where Tillman had skidded for twenty or thirty feet before the impact of the cars.
From the evidence, there can be no serious question of the negligence of Tillman. He admits that he was going 40 miles per hour and one or two other witnesses indicate that he was going faster than that. Indeed, the physical facts indicate that he was going much faster than 40 miles per hour before he reached the intersection. He skidded for 20 or 30 feet before hitting the other car and, after slowing down for that distance, he struck the Chevrolet a terrific blow as is shown by the sign on this car and the fact that the Chevrolet was knocked 30 or 40 feet sidewise to its left, and in the direction the Lincoln Zephyr was going, even beyond the intersection. Tillman admits that he did not slow up for the intersection nor did he see the other car until he got to the intersection, even though the Chevrolet had gotten almost half way across the intersection before he reached it.
The most serious contention made by the defendants is that Allen was guilty of contributory negligence in failing to see the Lincoln Zephyr coming from his right, and in failing to slow down or stop and accord Tillman the right of way. The evidence is clear and almost undisputed that Allen was not driving more than 20 miles per hour as he entered and crossed the intersection. This was not an excessive speed. While he testified that before entering the intersection he looked both ways, yet he admits that he did not see the Lincoln Zephyr until just before the impact. There is no reason why he should not and could not have seen this Lincoln Zephyr as *Page 180 
it approached from his right side and as he entered the intersection.
While Allen was guilty of negligence at least in this respect, yet his negligence was not the proximate and direct cause of the accident. He was almost half way across the intersection when the other car got to it and had a right to proceed across without being struck. Of course, if the cars had reached the intersection at about the same time, Tillman would have had the right of way as he was approaching from Allen's right. However, the question of prior right has passed out of the case in as much as it is clear that Allen had well pre-empted the intersection. As already stated, Allen had gotten almost across when his car was struck by the Lincoln Zephyr on the right front wheel and fender. It is obvious from the evidence that Allen had gone at least twice as far into the intersection as had Tillman when the impact occurred. As Tillman was going at least twice as fast as Allen, it is a matter of simple calculation to see that Allen was about half way across the intersection when Tillman entered it.
This case is very similar to the recent case of Boullion and Motty v. Bonin et al., 2 So.2d page 535, where we held, on rehearing, that while the plaintiff was guilty of negligence in failing to stop as he entered the intersection and in failing to see Bonin coming from his right on the opposite side of the street, we concluded that the negligence of Boullion was prior in time and place and had become passive and was not a direct or proximate cause of the collision. Like Allen in this case, Boullion had gotten far into the intersection before Bonin reached it and was entitled to proceed across and had a right to assume that Bonin would not run into him. The facts in the cited case are so similar to the facts in this case that we believe them to be decisive of the present case. We are also influenced in this case by our recent decision of O'Conner et al. v. Massachusetts Bonding Co. et al., 2 So.2d page 234.
In view of the above conclusions, it is not necessary to discuss the question of whether or not any contributory negligence of Allen could be imputed to Sartor and bar his recovery as Allen himself is not barred.
On the question of damages, plaintiff Allen suffered severe trauma in his stomach and lower abdominal regions which developed into a double hernia. He was in the hospital for a few days after the accident and was out for a week or so when he had to go back and undergo an operation for the double hernia. He stayed in the hospital 23 days for the operation. After leaving the hospital, he was convalescing for some time and went back to work on the first of December. He was wearing a support after he got out of the hospital and was wearing it at the time of the trial. It seems that the operation was a complete success and there are no permanent after effects. The trial judge gave him $3,500 on account of the operation, physical pain and suffering, etc., plus the loss of time and medical expenses, totalling $3,940. It is our opinion that this award is somewhat excessive by $500, and his award will be decreased accordingly.
As to Sartor, he sustained a broken left shoulder, a rather deep gash on his forehead and other bruises and contusions about his body. In his reasons for judgment the trial judge, in setting out the award to him, itemizes the award as follows: Loss of time, $250; injury and impairment of left arm, $1,500; pain, shock and suffering, $1,000; permanent scar on forehead and scalp, $250; medical expenses, $300; loss of suit of clothes and glasses, $35, which he says makes a total of $3,035. The judgment was signed for this amount, however, it is to be noted these various items aggregate $3335.00. It is our opinion that the items for pain and suffering and the loss of use of his left shoulder should be reduced by $500. In other words, his total allowance outside of loss of time, medical expenses and loss of suit of clothes and glasses should be $2,000, making his total award $2,835.
For these reasons assigned:
It is ordered that the judgment appealed from in the matter of Wilbur P. Allen v. James Tillman et al. be amended by reducing the award from $3,940 to $3,440, and as thus amended it is affirmed.
It is ordered that the judgment appealed from in the matter of Thomas R. Sartor, Jr., v. James Tillman et al. be amended by reducing the award from $3,035 to $2,835, and as thus amended it is affirmed.
Cost of this appeal to be paid by plaintiffs, all other costs to be paid by defendants. *Page 181