65 So.2d 914 (1953)
NORMAND
v.
NORMAND.
No. 7950.
Court of Appeal of Louisiana, Second Circuit.
May 29, 1953.
Earl Edwards, Marksville, for appellant.
B. C. Bennett, Jr., and Francis J. Gremillion, Marksville, for appellee.
*915 HARDY, Judge.
Plaintiff, individually and for the use and benefit of his minor son, sued for damages resulting from the accidental shooting of his said son by the minor son of defendant, alleged to have been caused by the negligence of the latter while the boys were jointly engaged in a hunting expedition. Defendant interposed exceptions of no right and no cause of action, which were sustained by the district judge, and the plaintiff prosecutes this appeal from such judgment.
Defendant's exception set forth four points of attack upon plaintiff's petition, as follows:
"(a) The allegations of ultimate fact in the petition do not show actionable negligence on the part of defendant;
"(b) The allegations of the petition show that the sole and proximate cause of the accident complained of was the negligence of plaintiff and that of his minor son, Steve Normand;
"(c) The allegations of the petition are confusing, discursive, mutually destructive and patently establish the negligence of plaintiff and that of his minor son, Steve Normand;
"(d) In the alternative only, that even if the allegations of the petition do show actionable negligence on the part of defendant (which is not only not admitted but is positively denied), they further show that the contributory negligence of plaintiff and that of his minor son, Steve Normand, was the sole, direct and immediate cause of the accident complained of, which is specially pleaded in bar of judgment herein."
Referring to plaintiff's petition we find that the foundation of his action is set forth in paragraph 4 thereof, as follows:
"Petitioner alleges that on the date aforesaid, petitioner's minor son, Steve Normand, and defendant's minor son, Earl Normand, were hunting together in the Parish of Avoyelles within the jurisdiction of this court; that while petitioner's minor son and defendant's minor son were approaching game in an open field in order to get within firing range of said game, defendant's minor son took a position behind and to the rear of petitioner's minor son; that while so approaching their intended game, and without petitioner's son being aware of his dangerous plight, defendant's minor son negligently held and pointed his firearm, a twelve-gauge shotgun, in the direction of petitioner's minor son and while so holding said gun pointed in the direction of petitioner's minor son, defendant's minor son negligently played with the hammer and trigger of same, causing its accidental discharge, the blast or gunshot load taking effect and striking petitioner's minor son into his back into the region of his lower back ribs."
We proceed to a discussion of the above specified observations raised by defendant, seriatim.
The first contention is predicated upon the proposition that "actionable negligence in cases similar to that at bar can only be sustained by an affirmation and consequent proof of `gross negligence'". In support of this proposition counsel for defendant cites a number of Louisiana cases involving accidental injuries resulting from the discharge of firearms, or the negligent handling of other dangerous instrumentalities, for example, a slingshot and a roman candle. The burden of this argument is that recovery has been allowed only in those instances where gross negligence on the part of a defendant was established. The conclusion drawn with reference to such actions is to the effect that the terms "actionable negligence" and "gross negligence" are synonymous.
In our discussion of the proposition here tendered we think it appropriate to confine ourselves to the jurisprudence of this state which concerns hunting accidents. To this resolution we are influenced by numerous observed factors, among which we mention as most persuasive the dissimilarity between the accidental or intentional discharge of firearms or other weapons under circumstances and conditions which are not analogous to those which subsist in the actual hunting of game.
By way of further preface we think it proper to call attention to certain well established principles which are here involved and which we consider to be conceded, *916 namely, that hunting is a dangerous sport, the participation in which involves a certain degree of assumption of risk by the parties involved, and that firearms are dangerous instrumentalities, the use of which necessitates extraordinary care on the part of those in control of such weapons.
In the light of well pleaded allegations which must be accepted as true, we can develop in our minds a rather accurate picture of the circumstances surrounding the incident. The two boys who were the principal actors, plaintiff's son, Steve, 16 years of age, and defendant's son, Earl, of the same age, were jointly engaged in a hunting expedition in the Parish of Avoyelles; as the two boys observed and began to approach game, which in this instance, though not shown by the petition, consisted of ducks resting upon a lake, they proceeded in single file, Steve in advance and Earl in the rear, the latter holding his twelve-gauge shotgun pointed toward Steve; as the boys made their way in this fashion it is alleged that Earl caused his weapon to be accidentally discharged by his negligent fingering of the hammer and trigger of the weapon and the load of shot struck Steve in the region of his lower back.
Our search of authorities has disclosed only two cases which involve similar circumstances, Siefker v. Paysee, 115 La. 953, 954, 40 So. 366, 4 L.R.A.,N.S., 119, and Fowler v. Monteleone, La.App., 153 So. 490, in the first of which cases recovery was denied and in the second allowed. As could be expected, plaintiff's counsel relies upon the Siefker case for his principal authority, while defendant's counsel insists upon the precedent of the Fowler case.
Counsel for defendant stoutly contends that "where parties are hunting together, voluntarily, no liability results, unless gross negligence is established."
It is obvious that the above worded statement is taken from the syllabus of the Siefker case, which reads as follows [115 La. 953, 40 So. 367]:
"Where persons are gunning together, and an accident occurs, the negligence, to render one liable, must be in its nature gross. Fault must be shown."
We have read and re-read the opinion of Mr. Chief Justice Breaux who wrote the majority opinion (Justices Monroe and Provosty dissenting) and we do not find that the opinion supports the principle which is stated in the syllabus as above noted. It is true that the court, after quoting from Chataigne v. Bergeron, 10 La.Ann. 699, made the statement that in such case and others which had been examined, in which the court pronounced liability, "gross neglect" had been found. We observe that the facts in the Chataigne case are not at all analogous to those concerned in the case at bar.
However, in proceeding with the opinion, the court clearly set forth the legal principle involved, in these words:
"Before concluding, we will state that the casualty should by consistent statement be traceable to actionable negligence."
It is so difficult as to be, for practical purposes, impossible to define the term "actionable negligence" in a thoroughly comprehensive and all-inclusive sense since the definition must inevitably depend upon surrounding circumstances. But, generally, we think that actionable negligence lies in the failure to exercise that degree of care which should be required of an ordinarily prudent person under the existing circumstances; 38 Am.Jur., verbo "Negligence," Section 2, page 643.
What we regard as the erroneous syllabus in the report of the case of Siefker v. Paysee, supra, has been perpetuated and reiterated in the following observation from 56 Am.Jur., verbo "Weapons and Firearms", Section 26, page 1009:
"In at least one case it is said that to render one liable for personal injuries inflicted upon another with whom he was hunting, by the sudden and unexpected discharge of a gun, he must be chargeable with gross negligence. (Citing Siefker v. Paysee.)"
As we have above observed we do not believe the opinion in the cited case sustains the conclusion reached.
In any event, we are firm in the opinion that actionable negligence is not *917 synonymous with gross negligence and that the right of recovery in the instant case is not dependent upon allegation and proof of gross negligence.
As further bearing upon the issue of negligence we observe that a conclusion of negligence follows the failure to exercise such degree of care as should be required under the circumstances. In the handling of a dangerous agency or instrumentality one is liable to another, who is harmed, by failure to exercise care in the use of such instrumentality. 38 Am.Jur., verbo "Negligence", Section 85, page 743, citing, inter alia, Palermo v. Orleans Ice Manufacturing Co., 130 La. 833, 58 So. 589, 40 L.R.A.,N.S., 671, and Fowler v. Monteleone, supra.
Under this line of reasoning we are convinced that there was no obligation upon plaintiff to plead gross negligence and that his allegations of negligence are sufficient to support his action.
Connected with defendant's above discussed ground of attack is the second complaint that the petition itself establishes the fact that the negligence of Steve Normand, which is imputed to plaintiff, was the sole and proximate cause of the accident. We do not find any tenable argument advanced in support of this proposition, and reference to plaintiff's petition fails to disclose any allegations which in our opinion would substantiate the conclusion urged. At this point we observe that facts properly adduced and established on trial may serve to support defendant's position but we are here concerned only with the merit of plaintiff's well pleaded allegations.
Defendant next urges the "confusing, discursive, mutually destructive allegations" of the petition. The argument on this point is based upon the claim that plaintiff himself has urged that the injury was the result of an accidental discharge of Earl Normand's gun, and that such an averment of accident presupposes the happening of an occurrence from a cause which was not immediately discoverable or which transpired by chance, and, as such, effectively destroys the contention of negligence. In other words, counsel for defendant urges that, by definition, the allegation of accident is incompatible with the allegation of negligence. We think it unnecessary to enter into a discussion of semantics in consideration of this point. It is elementary that words are to be accepted in their common and ordinary use, application and understanding. There is no hard and fast rule for the interpretation in a legal sense of the word "accident", but the use of the word in its ordinary sense and in contemplation of law is well established and understood. For all practical purposes "accidental" must be held to be contra-distinguished from and opposed to its antonym, "intentional." The "accident" of an automobile collision does not in any sense nor in any degree militate against the establishment of negligence on the part of one or both parties. Surely it could not be reasonably contended that such a collision in the vast majority of instances resulted from intent or purpose of any party. It follows that we find nothing objectionable nor inconsistent in the factual narrative of an "accident" which is the foundation for resulting charges of negligence.
Defendant's learned counsel finally alternatively asserts the contributory negligence of plaintiff's son, Steve, as the sole, direct and immediate cause of the accident, sustaining this conclusion upon the ground that the named minor deliberately placed himself in a position of danger in front of a companion bearing a loaded gun. It is further argued that, by this action, Steve Normand became the author of his own injury in a perilous situation which he should have avoided by either walking abreast of his companion or withdrawing from the venture. We find no authority which would support this position nor can we conceive in reason how it could be supported without doing violence to all the rights of recovery by one who has been injured through the alleged negligence of another.
Careful examination of the issues presented leads us to the firm conclusion that plaintiff has complied with the obligations of proper pleading and is entitled to attempt to support his allegations on trial of the case. It must be understood that we forebear any expression with reference to the *918 difficulties of proof in connection with the alleged facts.
We find it unnecessary to comment upon plaintiff's alternative reliance upon the doctrine of res ipsa loquitur which has been presented in oral argument and brief before this court inasmuch as the doctrine applies to a rule of evidence and not of pleading; Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437, and cases cited therein.
For the reasons assigned the judgment appealed from is reversed and set aside; defendant's exceptions of no right and no cause of action are overruled and the case is remanded to the Honorable the Twelfth Judicial District Court in and for Avoyelles Parish, Louisiana, for further proceedings consistent with this opinion. Costs of this appeal are assessed against defendant and other costs shall await final determination.