ELLIS, Judge.
Plaintiff seeks damages in tort against the defendant insurance company (insurer of his brother, Barney Ratcliff), for an inguinal hernia allegedly arising out of an accident which occurred on or about June 13, 1960 in Livingston Parish when a Ford pick-up truck being driven backward by Barney Ratcliff struck plaintiff as Ratcliff was attempting to place the truck in position to load a sack of feed at plaintiff’s place of business.
*91 The case was tried on the merits and judgment rendered with oral reasons assigned in favor of the plaintiff in the sum of $6953.70. Plaintiff prayed for $6000.00 for physical pain, mental pain, suffering, ■anguish and anxiety and for $1000.00 for medical bills, past and future, loss of wages, $2000.00, and money paid to keep his store open, $1000.00. As there are no written reasons and the medical and hospital bills are proven to have been $453.70, we therefore presume the balance of the amount of the judgment was for the other items prayed for in plaintiff’s petition. The defendant has appealed from this judgment.
Counsel for the defendants, in argument •and brief, contends that the trial court committed the following “Specifications of Error”:
“1. The Trial Court erred in finding from the evidence that the hernia suffered by plaintiff was related to or caused by his being struck by the pickup truck of Barney Ratcliff on June 13, 1960.
“2. The Trial Court erred in finding .actionable negligence on the part of Barney Ratcliff in backing his vehicle on the premises of plaintiff under the circumstances and facts appearing in the record; and
“3. The Trial Court erred in failing to find gross contributory negligence on the part of the plaintiff, who knew that his brother, Barney Ratcliff, was going to back the pickup truck to the side door of the building, but notwithstanding such fact, placing himself in a position where his presence could not be observed by his brother and remained there without listening or looking until struck by such backing vehicle.”
The plaintiff owned and operated a general merchandise store in Livingston, Louisiana, in which he also handled and sold livestock feed kept in a back room and to which there was a separate door on the side of the store building. On the outside of the regular door there was a screen door which it was also necessary to open and hold or prop open in order to deliver feed to a customer by loading it into his truck. Generally customers desiring feed would drive around to the back of the store and then back their vehicle to the door for delivery and loading.
On the day of the accident, which was alleged to have occurred on or about June 13, 1960, but which was definitely proven to have happened about three days prior to July 1st, 1960, Barney Ratcliff drove his pickup truck to the front of plaintiff’s store and the latter got in the truck with him and, after talking awhile, Barney Ratcliff told his brother he wanted to get a sack of feed before he left. In order to do this the truck was driven by Barney Ratcliff to the back of the store as usual and backed within eight or ten feet of the door through which the feed had to be loaded. At this time the plaintiff got out of the truck in order to open the door. The latch on the screen door was to the south and the door therefore opened to the north. The left side of the truck when backed toward the door was to the south, which placed the driver on the opposite side from the door when open. Plaintiff got out of the truck, walked to the back and had opened this screen door and was stooping over in order to prop the door open when Barney Ratcliff backed the truck into him, striking him in the region of the left side, which plaintiff described as “In the lower part of my stomach.” He described his condition immediately after being struck as follows:
“I grabbed my side, naturally, and grunted and run around there for a while, and he came running to me and he said, are you hurt? And I said, I don’t think too bad, and I didn’t think I was — and, well, that is it so far as what I did, then the burning got so bad and I went to the doctor with it, maybe a couple or three days after, I don’t remember just how long, but he told me I was ruptured and I told him what had happened and we figured it happened from that.”
*92 Plaintiff in another portion of his testimony described the ordinary procedure for backing a truck and the opening of the door and what he was doing at the time Barney Ratcliff’s truck backed up to the door in the following testimony:
“Q. Describe how you went about opening this door for your brother, Mn Rat-cliff?
“A. See, there are two doors, a screen door and a wooden door, usually you just ordinarily would go through the store and open the door for anybody, naturally, if you would be on the inside, but when you open the door and got it propped you ordinarily motioned them to back up. .Well, at that time when I went to the back door with him I was stooping there getting the prop when he backed up on me, ordinarily I reckon he would have waited until I motioned for him to come, but somehow or other he didn’t and he was figuring I had stepped into the door and I was figuring he had stopped, and there is such a lot of racket there, too, and I didn’t hear his motor running and he didn’t notice me being out there.
“Q. What kind of warning did he give you, if any?
“A. Well, he didn’t give me any. * * *
“Q. Well, just what were you doing when the truck backed up ?
“A. I was reaching out and down getting a prop that I used there to prop the door open with, and was sort of cata-cornered, I reckon you call it, and instead of him looking back, I reckon, by me being so close on the track he couldn’t see me through his mirror and he thought I was in tire door and he just backed up on me, but he isn’t the only fellow who has ever hit that door back there, it is skint all over.”
Barney Ratcliff told of the occurrence in his testimony as follows:
"Jack and me were setting in the truck talking and it was getting late, about closing time, as well as I remember, anyway, I had to get a sack of feed and he said drive around back and we will load it up, so we did. And I swung around and backed up and he got out and opened the door and I went to backing up and when I got back pretty close to the door I looked back to see if he was still there and didn’t see him and thought he was in the feed room and I backed on up there and I heard somebody hollering and I naturally jerked the truck in first and pulled up a few feet, and jumped out and run back and he was holding his stomach, I don’t know if he was down on his knees or just bent over, and I naturally knew I had backed into him and I asked if he was hurt much and he grunted a good while and I got the feed and went on. I told him he should go to the doctor and he said he didn’t think he was hurt much.
***** *
“Q. But when your brother got out of the cab you knew he was going to open the door, so you could back up ?
“A. Yes.
“Q. When you looked back before backing up, Mr. Ratcliff, was the screen door open?
* * * * * #
“A. All I remember is, I looked at the left door and saw it open and I thought he had gotten into the feed room.”
From the testimony of the plaintiff and his brother, it is evident, as is customary, that the latter had a mirror on the outside, forward and to the left of the driver, which was used ordinarily to observe traffic approaching from the rear. These mirrors cannot be used to see or observe traffic to the right or any object at the right rear of the truck. In order to get a full view to the rear of the truck one must look into a rear view mirror located inside of the truck, or if a driver is going to back ordinarily and usually he would turn his head to the right *93 and look through the rear view window of the truck, which would afford a clear and unobstructed view of any person to the right or left path of the hacking truck. Barney, it is to be noted, testified, “I looked at the left door * * * ”. The word “at” is evidently an error and should be “out”.
Plaintiff testified that after the accident and after he had recovered somewhat he assisted his brother in loading the sack of feed onto the truck, that the stinging and pain in his side continued and that he went to the doctor within two or three days thereafter. It is true that in the petition it is alleged the accident occurred on or about June 13, 1960. In addition to plaintiff’s testimony, Dr. Thames testified plaintiff consulted him in his office on the 1st day of July, 1960 complaining of bulging and pain in his left inguinal region, and gave him a history of having been struck across the lower abdomen by a truck in the latter part of June of 1960. Also offered in evidence is a letter from Dr. Thames to one of the attorneys of record for plaintiff in which.he stated:
“On July 1st, 1960 Mr. Ratcliff consulted me for a bulging in his left lower abdomen which had been present for three days. He states that two days prior to his visit to my office his left lower abdomen was struck by a truck backing up. He states that the next day following the injury he noticed a burning sensation in his left groin and a bulging which became larger on straining or coughing. He denied any history of any previous injury or bulging in the left groin. Examination on July 1st, 1960 revealed a bulging in the left groin the size of a golf ball which was reducable through the inguinal canal. This bulging increased in size on coughing and straining. A diagnosis of left inguinal hernia was made, produced by trauma and surgery for repair of the hernia was advised. I have scheduled him for surgery on October 13, 1960.” [1]
Additionally plaintiff described in his testimony his condition the next morning when he awakened as, “I was just sore, burning and I noticed a knot in my side, and I still went on a couple or three days even after that, not knowing just what it was.”
Counsel for the defendants cross examined the doctor on the basis of an assumption that the accident occurred on June 13, 1960, and that the plaintiff had come to see him on July 1st and in that interval had been lifting 100 pound sacks of feed and had been operating a tractor, and followed this assumption with the question, “ * * * could you state an opinion as to whether or not that hernia might have been caused by a trauma or by probable lifting of that feed and operating that tractor or this accident when he was struck?” To this question the doctor stated: “I would say either one of those possibilities are possible.” Although the petiton alleged the accident occurred on or about June 13, 1960, we are satisfied from an examination of the record that this accident occurred within three days prior to July 1, 1960, when plaintiff went to Dr. Thames and gave him such a history. It is, of course, true that the doctor could not positively testify that this blow caused this trauma, but from his testimony we know that he was really of the opinion that the blow had caused it. We are therefore of the opinion that plaintiff has proven by a preponderance of the evidence as required by law that the cause of the hernia was due to the blow from the truck when it backed into him.
We will now discuss Specification of Error No. 2 wherein the defendant contends that the trial judge erred because the record conclusively and definitely showed a complete lack of negligence on the part of *94 Barney Ratcliff, driver of the insured vehicle.
Counsel cites Neff v. Texas Mutual Insurance Co. (La.App.Orl.1956), 85 So.2d 703; Neyrey v. Maillet (La.App.Orl. 1945), 21 So.2d 158; Hahn v. P. Graham & Co., 148 La. 55, 86 So. 651 (1920) to support the proposition that the law in this type of case is clear and that it is not negligent to back a vehicle but in so doing a motorist is charged with the duty of exercising ordinary care to see that the maneuver will not injure the person or property of others. By ordinary care is meant the degree of caution which would he observed by reasonably prudent persons under similar conditions. No hard and fast rule can be laid down beyond this for each case must stand upon its own particular facts and circumstances. We accept these cases and their holdings based upon the particular facts of each case. However, counsel for defendant additionally contends that many cases involving accidents on private premises have held the defendant only liable where there was gross or wanton negligence. The facts in this case convict Barney Ratcliff of a failure to exercise not only ordinary care but of having been grossly negligent. The plaintiff was in the truck with him when he drove it to the side of the building, backed it to within eight or ten feet of the door which had to be opened, and stopped the truck. At this time plaintiff got out with the known intention of opening this screen door to which Barney had backed his truck many times before. He knew that the plaintiff had to go behind the truck, which was facing west, and open the screen door, which opened from the south — -the driver’s side of the truck — to the north, and Barney further knew the means of keeping this screen door open was to prop it open. In doing this, h necessitated the plaintiff’s stooping over. Ordinarily this door was opened and a signal given for the driver of a truck to back up to the door after the plaintiff had completed the operation. On this day, Barney, knowing that the plaintiff was behind his truck, looked through his left door at his rear view mirror and, of course, could only see to the left rear and could not possibly have seen the plaintiff to the right rear of the truck. However, it is clear that had he looked through the rear view window, which he was under a duty to do before backing the truck, he could have seen the plaintiff stooping over propping this door, or, if he did not desire to look through the rear view window of the truck, he was under a duty to get out of the truck and see whether the plaintiff was clear. When he looked in the rear view mirror and saw that the screen door had been opened from the north side, he assumed that the plaintiff was in the store although he never did see the plaintiff. He had no right to assume that the plaintiff was in the store when he did not see him there. He was under a duty and the plaintiff had the right to expect him to exercise the ordinary care of looking and definitely ascertaining that the plaintiff was in a safe position and had completed the opening of the door even to propping it before he backed the truck. When Barney backed this truck without first ascertaining definitely that the plaintiff had completed the opening of the door and was in a place of safety, this constituted gross negligence. He could have seen him had he properly looked to the right rear of the truck. All that would have been necessary was to turn his head to the right and look out the rear view window. The plaintiff had every right to expect Barney to keep the truck stationary until he gave him a signal from a safe position to back, or until Barney had looked with a full view to the rear of the truck and assured himself that plaintiff had completed the opening of the door and was in a place of safety.
Particularly applicable is the statement of the court in the Neff case, supra:
“ * * * In the instant case the record reflects the very evident fact that the defendant was fully aware of the precarious or perilous presence of the plaintiff, and after watching her *95 approach the rear of his vehicle, he failed to keep her under close observation until such time as he knew that she had cleared the rear path of his vehicle before starting the reverse motion thereof.
5{C * sjs ^ * H*
“ * * * it is 'an imperative legal and moral obligation imposed upon the operator of a motor vehicle, particularly when reversing the movement thereof, to do so slowly and to ascertain that there is no pedestrian or vehicle situated in the rear thereof’ and in Neyrey v. Maillet, La.App.1945, 21 So.2d 158, 164, the organ of the Court wrote that ‘it is, of course, not negligence to back a car. * * * However, a motorist is charged with the duty of exercising ordinary care to see that the maneuver will not injure the persons or property of others. By ordinary care, we mean the degree of caution which would be observed by reasonably prudent persons under similar conditions.’ ”
Counsel for the defendant relies heavily upon the case of Conrad v. Bertucci, La. App., 158 So. 596, in which the plaintiff at the time of the accident was engaged in cleaning bricks and performing his duties on the opposite side of a brick wall when the defendant’s truck, operated by the latter’s employee, was engaged in hauling away broken bricks and mortar, backed-the truck into a pile of bricks stacked against the base of the wall, causing it to fall over and strike plaintiff. In this case the court held the plaintiff guilty of negligence for,
“ * * * according to his own testimony, he was not only sitting close to the wall, but had his back towards. it. He was working in a place where there was imminent danger of injury by falling bricks, lumber, and debris, and he testified that he was warned by his employer to look out for falling walls and not to put himself in a dangerous position, and that he knew that it was dangerous for him to be where he was.
“The driver of defendant’s truck was not on a public highway and, in our opinion, used a degree of care with which we can find no fault in the circumstances. He was backing his truck slowly toward a pile of debris for the purpose of loading it onto the truck. He had stopped the truck and was motioned by the employee of the Southern Demolishing Company to back a little further in order to facilitate the loading. There were no other vehicles or pedestrians or other persons in the rear of the truck, and he was within his rights in attempting, under direction, to back up a little further in order to place the truck in the desired position. There was no negligence in his so doing.”
The factual situation in the above cited' case is entirely different from that in the case at bar. In the cited case the plaintiff had been warned not to be where he was, whereas in the case at bar, plaintiff with full knowledge of Barney Ratcliff went to-the rear of his truck to open the door. In the cited case it is true plaintiff knew he was in a place of imminent danger and should have taken extra precautions for his own safety and followed the instructions, of his employer, whereas in the case at bar, even if we consider that plaintiff was in a place of imminent danger to the rear of the truck while opening the door, it was with the full knowledge of Barney Ratcliff and the latter should never have moved his truck until he was certain that the plaintiff was in a place of safety, for he was the operator of the dangerous instrumentality and in full control of it. Barney Ratcliff should have reasonably foreseen and reasonably anticipated that if he backed his truck without definitely ascertaining the whereabouts of his brother, the plaintiff herein, he might strike the latter with the truck.
*96 Counsel for the defendant has cited a number of authorities which are factually distinguishable from the case at bar and therefore not apposite or controlling.
The defendant’s third Specification of Error that, even assuming negligence on the part of Barney Ratcliff, plaintiff still could not recover because he was guilty of obvious gross negligence, imprudence and carelessness, is not supported by the facts in this case. The defendant argued that the mere fact the plaintiff was aware that most of the vehicles which backed to the store building to load feed actually bumped or were in collision with the side of the building, does not convict him of contributory negligence, for when he got out of the truck he did so with a full knowledge on the part of the driver that he was going to the rear of the truck to open the screen door. The driver knew exactly how this door was opened and how it was kept open and he could and should have seen the plaintiff before he moved his truck further to the rear. The plaintiff had every right to expect the driver of the truck would remain stationary until he gave him a signal that he was in a place of safety or until the driver had made the proper observation to the rear of his truck, either through the rear view window or, if necessary, to step out on the side of the truck to see that the plaintiff had completed the operation and was in a place of safety. Counsel also argues that the plaintiff should have heard the vehicle backing up. There is no testimony the motor was ever turned off on the vehicle nor that he raced the motor or changed the speed of the motor when he began to back. Had Barney Ratcliff made the proper observation to the rear of the truck this accident would never have occurred. We do not find the plaintiff was contributorily negligent in the least from the facts in this case.
Counsel for defendant submits the amount awarded is excessive, “for an uneventful inguinal hernia operation in the amount of $6953.70.” Plaintiff has not submitted the necessary proof to show special damages in the nature of loss of wages and income.
Counsel for the defendant submits that the amount of the judgment was excessive and exhorbitant and an award, if liability were found, of $1250.00 or $1500.00 would be entirely adequate. Counsel for the plaintiff cites Allen v. Tillman, La.App., 3 So. 2d 177, decided by this Court in 1941 in which the plaintiff had suffered severe trauma in his stomach and lower abdominal regions which developed into a double hernia; was in the hospital for a few days after the accident and was out for a week or so when he had to go back and undergo an operation for double hernia; stayed in the hospital 23 days after the operation; convalescent for some time and went back to work on the 1st of December and the accident had occurred on September 23rd; wore a support after he got out of the hospital and up to the time of the trial; operation was a complete success and no permanent after effects, and the trial judge awarded him $3500.00 plus loss of time and medical expenses, totalling $3940.00, which was reduced to the sum of $3500.00 by this Court. While the plaintiff in the cited case had a double hernia and was hospitalized for approximately three times as long as plaintiff in the case at bar, the case was decided in 1941 and there has been an increase in the award of damages in all types of cases since that time.
Counsel also cites the case of Kirby v. Great American Indemnity Company, La. App., 98 So.2d 277, decided by this Court in 1957 in which the plaintiff, as a result of an automobile accident, suffered a right hernia which had not been operated on at the time of the trial in addition to bruises, contusions and some injuries which resulted in pain in his legs and in which an award of $3000.00 was made to him.
Counsel cites also Myers v. American Chain & Cable Company, La.App., 109 So. 2d 270, decided by this court in 1959 in which an award was made to the plaintiff *97 of $7500.00, however, the injuries in addition to the hernia were serious and this case is not apposite.
In the case at bar plaintiff was injured several days prior to July 1st, 1960; was operated upon Nov. 30th, remained in the hospital through December 7th; was discharged as fully recovered March 1, 1961.
For plaintiff’s pain, suffering and disability we will award the sum of $3500.00. Plaintiff also proved medical and hospital bills in the sum of $453.70. He failed to prove other items of damage alleged and prayed for in his petition.
Therefore, the judgment of the District Court will be amended by reducing same to the sum of $3953.70, the defendant to pay all costs.
Amended and affirmed.

. Plaintiff actually was operated upon Nov. SO, 1960 and remained in the hospital until Dec. 7, 1960. Plaintiff explained the delay in the operation because “I just hated the thought of haring to do it.”