ELLIS, Judge.
Richard Daigle, owner and operator of a barroom, and his liability insurer, American Employers Insurance Company, have appealed from a judgment in favor of the plaintiff for physical injury, pain, suffering and residual scars in the full sum of $10,-000.00, medical expenses in the sum of $1447.00, loss of wages $960.00, for a total of $12,407.00, which were found by the lower court to have been sustained as the result of the discharge of a blank cartridge from a 22 pistol belonging to Richard Daigle, by one Clement Cavalier, a patron in his barroom.
There is no dispute that Clement Cavalier obtained Richard Daigle’s 22 caliber *714 pistol, loaded with a blank at the time, in order to play a “prank or a practical joke” upon the plaintiff when he came into the barroom and that he pressed the pistol against plaintiff’s right side and pulled the trigger, causing a wound which became infected and required plaintiff to spend seventeen days in the local hospital, and further treatment until March 31, 1962, at which time he was discharged, although he went back for one more visit of his own volition on April 14, 1962.
It is contended that Cavalier obtained the pistol in one of two ways — either directly from Richard Daigle or from an open box on a shelf in the kitchen to the rear of the barroom where it had been placed by Daigle. It is also proven by the evidence that this pistol had been loaned by Daigle to be used in a high school play and after-wards it had been returned to him. Daigle admitted the pistol on one previous occasion to his knowledge had been fired with a blank by Lenis Leonard. The latter testified as a witness for the defense and stated he had obtained some IS or 20 blanks and had loaded the pistol belonging to Daigle and had played a joke on Lawrence Gaudit by shooting at him from some 20 feet away and thereafter Daigle had “picked it up” but he didn’t know what had become of the pistol. Bernie Hebert testified he had been “fired at for a joke with blanks” by Lenis Leonard, in the defendant’s place of business, approximately three or four days before the plaintiff was shot. However, he didn’t remember whether the defendant, Daigle, was present in the bar at the time or not. Lanson Joseph Landry testified that on the morning of January 21, 1962, which was the same day plaintiff was shot, he went into defendant’s barroom and someone was playing with the blank gun, he asked to see it and after he got it “shot one of my friends for a joke” who he stated was Clement Cavalier and who a short time thereafter shot the plaintiff. He was uncertain as to whether Daigle was present at the time of this incident. Clement Cavalier testified he went into the bar and when he went into the bar Landry shot him with the pistol, then handed the gun to Daigle and when he, Cavalier, saw his uncle, the plaintiff, he asked Daigle for the gun and Daigle handed it to him already loaded for the purpose of scaring the plaintiff. Daigle positively denies this but states that Cavalier went into his kitchen and got this pistol out of “an open box” where anybody could see it. Daigle testified that Lenis Leonard got the pistol in the same manner out of his kitchen and that “They usually walk in there. He just went and got it, that’s all”. He was also asked how Lenis Leonard knew the pistol was in his kitchen and he answered, “Just like Clement Cavalier. They used to walk in my kitchen to drink coffee and all that.”
Based upon the above testimony, we agree with the finding of the court as stated in his written reasons and we quote:
“The Court finds it unnecessary to determine which version of the incident is correct for the reason that the Court is of the opinion that liability exists even under the facts as admitted by the defendant. ‘It is the duty of every storekeeper and restaurant operator to use reasonable care in the protection of his patrons and guests. Particularly must he, himself, refrain from any act or conduct likely to cause injury to a guest.’ Matranga vs. Travelers Insurance Company Et al [La.App.], 55 So.2d 633, 636. Furthermore, ‘One is guilty of negligence when injurious consequences of his act were foreseeable, probable and reasonably to be expected and are the proximate cause thereof.’ Matranga vs. Travelers Insurance Company Et Al, 55 So. 2d 633, 635-636. In addition, ‘Firearms are dangerous instrumentalities, the use of which necessitates extra-ordinary care on the part of those in control of such weapons.’ Normand vs. Normand [La.App.], 65 So.2d 914, 916.
“In the instant case the defendant was the owner of the pistol and had the *715 control thereof. The evidence shows that on several occasions the gun was loaded with blanks and used to frighten unsuspecting patrons. The defendant admitted knowledge of at least one prior occasion when the gun had been used in this manner, and although he denied knowledge of other specific instances, the Court is of the opinion that he must have known in a general way that this type of amusement was being practiced. By his failure to put a stop to it he lent it his tacit approval. The defendant admitted keeping the gun in his kitchen, which was readily accessible to his patrons, in an open box where it was clearly visible to all. Under the circumstances this was the height of folly. The defendant should reasonably have foreseen that what had happened previously would happen again; that is, that someone would pick up the gun and use it on an unsuspecting patron. It was gross negligence on the part of Daigle and a wanton disregard for the safety of his patrons to have the pistol readily available in a barroom for the use of anyone who wished to participate in the dangerous amusement of firing blanks at unsuspecting persons.”
We are well aware of the position of counsel for defendant as set forth in his brief, the main portion of which we quote:
“In conclusion, we submit that the judgment of the Lower Court should be reversed. While it is true that a ‘proprietor of a public house of entertainment owes the duty to exercise reasonable care to protect guests from injury at the hand of a fellow guest, this duty is not absolute and is limited to the exercise of reasonable care, and the proprietor is liable only when he is negligent.’ DeHart v. Travelers Insurance Company, Et Al [La.App.], 10 So.2d 597. This principal that there is no liability without negligence has been consistently held by the Courts to control in cases of this sort. It is true: that plaintiff can cite may examples: where the proprietor of an establish-ment was held responsible for injuries suffered by an invitee or guest on his premises, but each case clearly shows that there was negligence, either active or passive, on the part of the proprietor and that this negligence resulted in liability.”
We find nothing wrong with the argument above but believe that when the law as stated therein is applied to the clear and undisputed facts in this case that Richard Daigle was guilty of negligence, more active than passive, either of which would admittedly constitute negligence resulting in liability. The pistol belonged to him, had been used on a number of occasions in his barroom and once admittedly in his presence, and we believe from the evidence that he well knew this pistol was being used to play practical jokes upon his patrons and if he did not give the pistol to Cavalier he negligently placed it in an open box in full view of his patrons whom he knew were in the habit of going into his kitchen for coffee. All of the facts when considered together convict Daigle of negligence in his absolute failure to exercise reasonable care to protect his guests from injury.
QUANTUM
The plaintiff worked on a dredge boat and received $1.15 an hour and testified that his take-home pay amounted to $160.00 every two weeks, or $80.00 per week. It is further shown that immediately after the shooting he was taken to the Peltier Hospital at Pierre Part where he was treated by Dr. Jerome Peltier. This doctor did not testify and was evidently not summonsed. Pie did not stay in the hospital that night but the next day returned to the hospital where he spent two days and the next day he went to the hospital of Dr. Nelson Cox in Napoleonville. When he arrived, Dr. Cox testified, he had definite evidence of peritonitis with infection of a wide area *716 around the wound. He operated on him that same day after observing him for a few hours and this operation entailed “a cleaning of the wound and exploration of the abdomen with the draining of the pus from the abscesses”. He stated that the patient was in considerable pain during this period oí time and that he remained a total of seventeen days in his hospital. He continued to see him at intervals of a week until March 31, 1962, which was approximately two months and ten days after the infliction of the wound. In answer to a question as to whether he had any residual adhesions, the doctor said “he probably has but I can’t say whether it will ever give him any trouble or not”. Probably not as this case was tried in June of 1963 and there was no evidence of any trouble from any adhesions. Under cross-examination Dr. Cox stated the patient, or plaintiff, had made a normal recovery from an accident of this type. This constitutes a complete resume of the only testimony on quantum other than the bills rendered for services. The bill for the seventeen days in the Napoleonville Hospital under Dr. Cox’s care was $1174.00, or slightly more than $69.00 per day. A bill of the doctor for surgery was $250.00, for an office visit and Bicillin on 2/14/62 $8.00, office visits on 2/19/62, 2/24/62, 3/3/62, 3/10/62 and 3/24/62 $3.00 each, for a total doctor’s bill of $273.00. He lost approximately two months and ten days from work and at $160.00 each two weeks the amount totals approximately $793.33. Therefore, the total amount of hospital charges, doctor’s charges and loss of wages is $1,820.33.
The learned judge below granted $10,-000.00 for physical injury, pain, suffering and residual scars which we think is highly excessive. Details of the wound are not described other than it got infected and we do not presume it went into the inner part of the body. The plaintiff’s medical testimony is very scant with relation to a $10,000.00 award. The hospital bill is a regular printed form, for example, the room or ward is printed under the general word “Item” 17 days @ $12.00, or $204.00, Operating room $50.00, Anesthetics $40.00, X-rays 2 @ $10.00 each $20.00, Dressings and Stomach Tubes $150.00. Yet there is not one line of testimony to explain whether the dressings cost this or the stomach tubes themselves or whether he even had stomach tubes inserted. There is no testimony that the wound went deep enough to enter the stomach itself. We must admit it appears to be a serious bill for seventeen days but with no explanation by the doctor of the details of the bill.
 Counsel cites the old rule of law that “[t]he trial court has much discretion in the award of general damages for pain and suffering, and the trial court’s award should not ordinarily be disturbed upon appellate review.” Jobe v. Credeur, La.App., 125 So.2d 487. We, of course, recognize this pronouncement but also can never forget that under the Constitution the appellate judges are charged with a review of the law and of the facts.
Counsel for the defendant cites the case of Ratcliff v. Insurance Company of State of Pennsylvania, 151 So.2d 90, Ct.App. 1st Cir., 1963, in which writs were refused on April 30, 1963, and in which plaintiff had suffered a hernia as a result of an accident and he quotes from the holding as follows:
“ ‘In the case at bar plaintiff was injured several days prior to July 1st, 1960; was operated upon (for hernia) Nov. 30th, remained in the hospital through December 7th; was discharged as fully recovered March 1, 1961.
“ ‘For plaintiff’s pain, suffering and disability we will award the sum of $3500.00.’ 151 So.2d at 97.”
It is rather difficult to compare pain and suffering in the case at bar and the case cited for as far as noted the testimony on this point in the case under consideration *717 is scant. It also is noted the plaintiff in the cited case was under treatment for approximately nine months whereas plaintiff’s total disability herein was approximately two months and ten days.
Counsel for defendant also cites the case of Carruth v. State Farm Mutual Automobile Insurance Company, 113 So.2d 56, Ct.App., 1959, in which we believe the injuries, pain, and suffering were much more serious than in the Ratcliff case or the case at bar. The organ of the court herein agrees with the dissent of Judge Hardy that the award in favor of the plaintiff should have been increased. We believe this because in this case the court described the injuries of the plaintiff as follows :
“ 'Mrs. Carruth received injuries which she testified caused chest pain, and bruises on the right shoulder, left breast, right hip, legs and tops of her feet. She received medical attention * * * on the morning following the accident and when the bruised condition of her breast progessively got worse, * * * she underwent surgery for the removal of the left breast. Following the operation she became so extremely nervous she required hospitalization to relieve the condition.
“ "The trial court rendered judgment * * * in favor of Mrs. Lois Sandell Carruth in the sum of $4,000.00 for personal injuries. After a careful examination * * * the awards made in favor of plaintiffs are neither inadequate nor excessive * * *. Carruth vs. State Farm Mutual Automobile Insurance Company, 113 So.2d at Page 63.”
We believe that the award of $10,-000.00 for physical injury, pain, suffering and residual scars should be reduced to the sum of $5000.00 for injury, pain, suffering and no award for residual scars and that medical expenses for $1447.00 be affirmed and that the loss of wages in the amount of $960.00 awarded be reduced to $793.33, for a total award of $7240.33.
It is therefore ordered that the judgment of the lower court be amended by reducing same from $12,407.00 to $7240.33.
Amended and affirmed.